MacCarthy, Respondent, vs. Whitcomb and another, Receivers, Appellants.

*March 22 — April 9, 1901.*

*Railroads: Negligence: Personal injuries: Fellow-servants: Court and jury: Immaterial error: Transitory action: Presumptions as to statutes of another state: Excessive damages: Misconduct of counsel.*

1. Whether two persons are fellow-servants when all the facts in respect to their several duties and lines of employment are undisputed, is a question of law for the court. While it is improper to submit such a question to the jury, their finding thereon cannot have any significance in supporting a judgment, and may be disregarded on appeal.

2. To constitute fellow-servants it is not necessary that the negligent workman causing the injury and the one injured should both be engaged in the same particular work: it is sufficient if they are employed by the same master, under the same control, and performing duties and services for the same general purpose. Hence, a conductor and a brakeman on a freight train, who negligently leave the train standing on the track without displaying the proper signals, are fellow-servants of a fireman on another train, who is injured by a collision resulting from such negligence. *Phillips v. C., M. & St. P. R. Co.* 64 Wis. 475, distinguished.

3. An action was brought in Wisconsin against a railroad company for an injury occurring in Illinois, caused by the negligence of fellow-servants in the operation of trains. Sec. 1816, Stats. 1898, expressly gives a right of action for all damages sustained within Wisconsin by an employee engaged in the performance of his duty while operating, running, riding upon, or switching passenger, freight, or other trains, engines, or cars, caused by the carelessness or negligence of any other employee. The law of Illinois on the subject of fellow-servants was not proved, but in both states the common law is in force except as modified by statute. *Held,* that the presumption exists that the law of Illinois on that subject is the same as the law in Wisconsin, and that the plaintiff was not barred from a recovery by reason of the negligence complained of being the acts of such fellow-servants.

4. An action against a railroad company by an employee for injuries received in Illinois, being transitory, is triable in the courts of Wisconsin.

5. A railroad fireman, injured in a collision, received a compound fracture of a leg, and all the toes of that leg were amputated. He remained in bed ten weeks, was treated for nearly a year and a half, during which time he was very weak, and suffered a great deal, and for a time was helpless. The foot never got thoroughly well. On the trial of an action therefor, his attorney, in the closing argument, charged that the defendant failed to put certain witnesses on the stand, and that railroad companies had a certain coercive method of calling men in to make statements, and, although warned by the trial court, continued, in substance, that such facts were matter of common knowledge, and that courts take judicial notice that corporations do get men to do those things. *Held,* an abuse of the privilege of counsel.

6. In view of the record and such remarks of counsel a verdict of $7,500 is *held* greatly excessive, and a remission of $2,500 is made a condition of judgment in plaintiff's favor.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

For the appellants there was a brief by *Howard Morris* and *Thos. H. Gill,* and oral argument by *Mr. Gill.*

*D. J. Hemlock,* attorney, and *W. J. Strong,* of counsel, for the respondent.

CASSODAY, C. J.   This action was brought to recover damages for personal injuries sustained by the plaintiff on the morning of January 31, 1898, while engaged as a fireman on one of the defendants' locomotives moving a north-bound freight train, at Grayslake station, in Illinois.   The circumstances under which the accident occurred are to the effect that about eight o'clock on the evening of January 30, 1898, engine 82, upon which the plaintiff was fireman and P. D. Walsh was engineer, left Chicago, north bound, drawing freight train No. 21, in charge of Conductor Ray and Brakemen Jim McCarthy and Jim Gillis; that the night was stormy, snowing and blowing, and the train proceeded northerly to a point known as Hendee's Crossing, about three miles south of Grayslake station, where the train be-

came stalled, and was unable to proceed further north, by reason of the snow; that Conductor Ray and Brakeman Gillis cut off engine No. 82 from the train, and, with the engineer and fireman, proceeded to the depot at Grayslake, where they arrived some time after one o'clock in the morning of January 31, 1898; that that was not a night station, and Conductor Ray went to the agent's residence, called him up, and returned with him to the station, after which the engineer, Brakeman Gillis, the conductor, and the agent went into the depot, and the agent opened communication with the train dispatcher's office at Waukesha, some fifty miles distant, as directed by the conductor, to get relief for the stalled train; that after some delay Conductor Ray was advised by the train dispatcher at Waukesha that there was a south-bound freight train then at Lake Villa, the station next northerly from Grayslake; that after some discussion as to details with the dispatcher, it was arranged that the extra south-bound freight train, which was drawn by two engines (Nos. 104 and 106), with Conductor Emmons in charge, would proceed to Grayslake, and an order was given to that effect; that, pursuant to the orders given when the south-bound extra train reached Grayslake, the two engines attached to it were cut off, and proceeded southerly beyond the south end of the passing track at Grayslake; that Walsh then returned to his engine No. 82, with the plaintiff and the brakeman, and proceeded southerly of the same switch, and then ran northerly on the side track far enough to allow a clear passage on the main line; that, after the two engines of the extra south-bound train went south of the south passing switch, engine No. 82 backed out and coupled its tender to the rear or tender of the northerly engine of the south-bound freight train, so that the two extra engines were headed south, and Walsh's engine was headed to the north, in order to have an engine pilot in advance in whichever direction they moved; that the three engines thus

MacCarthy vs. Whitcomb and another.

coupled proceeded southerly to the stalled freight train, coupled to that train, and returned with it to Grayslake; that at that time Engineer Walsh, with engine No. 82, which was the head engine, controlled the air brake which extended from his engine through the other two engines, and to the freight cars thus equipped in the train, so that, approaching Grayslake, Walsh had entire control of the brakes on the train, and entire control of the movements, communicating his signals by whistles to the other engineers and the train crew; that as they approached the station Engineer Walsh turned on the air brakes, and, after sounding the station whistle, Walsh, being the head engineer, sounded a .whistle for off-brakes, and proceeded to work steam, increasing the speed of the train as they reached the south switch; that Walsh proceeded north on the main track until his engine collided with the south-bound freight train, which had been left standing at the north end of the platform without any red light at the south end thereof by Conductor Emmons, of that train, and the plaintiff was injured before he could escape from the engine.

Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the plaintiff was injured January 31, 1898, at the time and place claimed by him, by an accident occurring by reason of a locomotive of the defendants striking a train of the defendants; (2) that the employee of the defendants engaged in operating the locomotive No. 82 was a fellow-servant of the plaintiff; (3) that the employees of the defendants engaged in operating the train of the defendants which was struck by the locomotive were fellow-servants of the plaintiff at the time of the accident; (4) that the plaintiff at the time of the accident did not know that there was a train standing on the track at Grayslake; (5) that there was no red light on the south end of the south-bound train at the time of the accident; (6) that the conductor and brakeman in charge of the south-bound train

were not fellow-servants of the plaintiff at the time they failed to put such light on the south end of such train; (7) that it was a want of ordinary care on the part of the defendants' employees in charge of the south-bound train to leave said train standing on the main track without such light; (8) that the failure to put such red light on the south end of the south-bound train did contribute to the injury suffered by the plaintiff; (9) that the absence of such light was the proximate cause of the plaintiff's injury; (10) that Engineer Walsh did not know that the south-bound train was standing on the main track in time to have prevented the collision by the exercise of ordinary care; (11) that the plaintiff did not know that the train was standing on the main track in time to have prevented the collision by the exercise of ordinary care; (12) that, if a red light had been on the south end of the south-bound train, the plaintiff could have seen the same in time to have jumped from his engine before it struck said train; (13) that Conductor Emmons in failing to put such light on the south end of the south-bound train did violate the rules of the defendants; (14) that the defendants' employees were guilty of negligence which was the natural and probable cause of the accident by which the plaintiff was injured, and which accident, in the light of the attending circumstances, ought reasonably to have been foreseen by a person of ordinary intelligence, care, and prudence; (15) that the plaintiff was not guilty of any want of ordinary care and prudence which contributed directly to produce the injury complained of; (15½) that Engineer Walsh was not guilty of any want of ordinary care and prudence which contributed directly to produce the injury to the plaintiff; (16) that, if the plaintiff is entitled to recover in this action, they assessed his damages at $7,500.

From the judgment entered thereon in favor of the plaintiff for that amount, with costs, the defendants bring this appeal.

MacCarthy vs. Whitcomb and another.

It is contended on the part of the defendants that, before leaving the depot at Grayslake, it was understood and agreed by both conductors and Walsh, the engineer of the plaintiff's engine, that the south-bound train should be left upon the main track at the north end of the platform while the two engines belonging to that train went south to aid in bringing the stalled train to the south switch at Grayslake; that upon reaching that point Walsh's engine, 82, was to be cut off and put upon the side track, while the other two engines were to be cut off from the stalled train and backed up to the south-bound freight train so standing upon the main track, and coupled to it; and that in the meantime Walsh, with engine 82, was to back down to the stalled train and couple to it, and draw it up onto the side track, so as to allow the south-bound train and the two engines to pass south upon the main track; and that, contrary to such understanding and agreement, Walsh, as engineer of the north-bound train, having full charge of the movements and air brakes on that train, failed to stop at the south switch, as so agreed, but continued north on the main track at a rapid speed until his engine ran into the south-bound train so standing upon the main track; and hence that his negligence was the proximate cause of the plaintiff's injury. By the answer to the tenth question the jury found that Walsh did not know that the south-bound train was standing on the main track in time to have prevented the collision by the exercise of ordinary care, and by their answer to question No. 15½ they found that Walsh was not guilty of any want of ordinary care and prudence which contributed directly to produce the injury to the plaintiff. In respect to the south-bound train being so left upon the main track without any danger signal, the jury found, in effect, (5) that there was no red light on the south end of the south-bound train, at the time of the accident; (7) that leaving such train so standing on the main track without such light was a

want of ordinary care on the part of the employees of the defendants in charge, (8) which contributed to the injury of the plaintiff, (9) and was the proximate cause of his injury; (14) and that such employees of the defendants were guilty of negligence, which was the natural and probable cause of the accident, and ought reasonably to have been foreseen by a person of ordinary intelligence, care, and prudence; (13) and that Conductor Emmons, in failing to put such light on the south end of that train, violated the rules of the defendants. The rules required that each train running after sunset, or when obscured by fogs or other cause, display a headlight in front and two red lights in the rear; that the conductor must know that his train is fully protected in both directions, and he is held responsible for any accident which occurs from a want of any precaution that could have been taken. It appears in evidence, also, that it was customary to put a red light on the south end of a train under the circumstances stated, and that it was not customary to leave such train, under such circumstances, without such red light. It is undisputed that there was no red light upon the south end of the train so left upon the main track, and that leaving the same without such danger signal was negligence, and the proximate cause of the injury to the plaintiff.

The findings of the jury fully exculpate the plaintiff from all blame in that respect, and are to the effect (4) that the plaintiff at the time of the accident did not know that there was a train standing on the track at Grayslake; (11) and that he did not know that the train was standing on the main track in time to have prevented the collision by the exercise of ordinary care; and (15) that the plaintiff was not guilty of any contributory negligence. The question recurs whether upon such findings the plaintiff is precluded from a recovery by reason of the fact that the negligence found was the act of a co-employee. It is conceded by all that the plaintiff's engineer, Walsh, and all the defendants' employees engaged

at the time in operating the north-bound train were fellow-servants of the plaintiff. The plaintiff contends, however, and the jury found, (3) that, although the employees of the defendants engaged in operating the south-bound train were fellow-servants of the plaintiff *at the time of the accident,* yet (6) that the conductor and brakeman in charge of that train were not "fellow-servants of the plaintiff *at the time they failed to put such light on the south end of such train.*"

Such questions were undoubtedly submitted to the jury in pursuance of what was said in a case from Illinois cited by counsel. *Illinois S. Co. v. Bauman,* 178 Ill. 351, 356, and other cases from that state. But whether two persons are fellow-servants when all the facts in respect to their several duties and lines of employment are undisputed, as here, and as is generally the case, is a question of law for the court. Of course, it was improper to submit such questions of law to the jury. *Heddles v. C. & N. W. R. Co.* 74 Wis. 239; *Baxter v. C. & N. W. R. Co.* 104 Wis. 313. But, since their findings upon such questions of law cannot have any significance in supporting the judgment, they may be disregarded. The question whether Conductor Emmons and the defendants' employees engaged in operating the south-bound train were fellow-servants of the plaintiff at the time they failed to put such red light on the south end of that train must be determined as a matter of law, regardless of the verdict of the jury. It was held by this court at an early day that trackmen engaged in repairing the track, who had taken up rails without giving sufficient notice to those in charge of an approaching train, were fellow-servants with a brakeman injured on such train in consequence of the removal of such rails without such notice. *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668. That case has frequently received express sanction from this court. *Toner v. C., M. & St. P. R. Co.* 69 Wis. 197, 198, and cases there cited. In this last

MacCarthy vs. Whitcomb and another.

case an unattached freight car, left at night on a level side track near a railroad station, was in some manner moved upon the main track, obstructing it, and in a collision with a passing train caused thereby a brakeman on the train was injured; and it was held that although, by the rules of the company, its station agent was held responsible for the safety of the switches, and was expressly required to see that the main track was kept clear- and unobstructed for the passage of trains, and to be out at the station and know that everything was right when trains were passing, yet such agent was a fellow-servant of such brakeman. In that case it was said by Chief Justice COLE:

" To constitute fellow-servants, within the meaning of these cases, it is not necessary that the negligent workman causing the injury and the one injured should both be engaged in the very same particular work. It is sufficient if they are employed by the same master, under the same control, and performing duties and services for the same general purpose." Page 198 and cases there cited.

In *Phillips v. C., M. & St. P. R. Co.* 64 Wis. 475, 486, it was held that the employees upon one of the colliding trains were not fellow-servants with those on the other; but that was put on the ground that " neither the Wisconsin Central nor the defendant had any control over the employees of the other, except that upon the track in question the Wisconsin Central trainmen were required to obey the rules prescribed by the defendant's general manager, and the special orders given by the defendant's train dispatcher." That case is clearly distinguishable from the one at bar. The cases in this court support the proposition that Conductor Emmons and those in charge of the south-bound train were fellow-servants with the plaintiff at the time they neglected their duty to place a red light at the south end of the south-bound train. In this we are, according to Mr. Elliott, in harmony with " the weight of authority." 3 Elliott, R. R. § 1331. He there says:

"There is, as we think, no valid reason for discriminating between cases where the employees are engaged in operating the same train and cases where they are engaged in operating different trains. In both cases they are employed in the same line of service and by a common master." See numerous cases cited by him.

But, notwithstanding Conductor Emmons and those in charge of the south-bound train were such fellow-servants of the plaintiff, yet if the accident had happened in this state there could have been no question but that, under our statute, the plaintiff could have recovered. Sec. 1816, Stats. 1898. That section expressly gives such right of action for all damages sustained within this state by an employee engaged in the performance of his duty as such, while "operating, running, riding upon or switching passenger, freight or other trains, engines or cars," "caused by the carelessness or negligence of any other employee." Of course, that section is not in force in Illinois, where this accident occurred. The defendants, by way of answer, alleged "that the common-law rule as to the relation of master and servant obtained in the state of Illinois," and that the plaintiff's injury was caused by the negligence of a fellow-servant, and hence under the law of that state there was no liability. But neither the defendants nor the plaintiff proved or attempted to prove the law of Illinois in that respect. The question recurs, What presumptions, if any, are to be indulged? It will be observed that this action is not based upon a statute of another state — much less, a penal statute — like some cases which have been in this court. *Hull v. Augustine*, 23 Wis. 383; *Anderson v. M. & St. P. R. Co.* 37 Wis. 321; *Bettys v. M. & St. P. R. Co.* 37 Wis. 323; *Schoenberg v. Adler*, 105 Wis. 645, 649, 650; *Bartlett v. Collins*, 109 Wis. 477. Nor did the cause of action arise in some state or country where the civil law is in force. *St. Sure v. Lindsfelt*, 82 Wis. 346, 351, 352. As indicated, the cause of action is for personal injury caused by a want of ordinary

care of the employees of the defendants. Such a cause of action is cognizable at common law. It arose in Illinois, where the common law is in force, except as modified by statute. Being a transitory cause of action, it was triable in the courts of this state. *Eingartner v. Illinois S. Co.* 94 Wis. 80, 81. In view of the numerous decisions of this court, and after careful consideration, and in the absence of any proof of the statutes of Illinois on the subject of fellow-servants, we must hold that the presumption is that the law of that state on that subject is the same as the law in this state, as above indicated. *Rape v. Heaton,* 9 Wis. 328, 337, 342; *Walsh v. Dart,* 12 Wis. 635; *Osborn v. Blackburn,* 78 Wis. 209; *St. Sure v. Lindsfelt,* 82 Wis. 346, 351; *Schoenberg v. Adler, supra.* We must hold that the plaintiff is not barred from a recovery by reason of the negligence complained of being the acts of fellow-servants.

Several questions are discussed by counsel in relation to the admission of evidence, the submission of certain questions to the jury, and certain portions of the charge of the court; but the views expressed dispose of the case upon the merits and upon undisputed evidence.

Among the grounds urged for a reversal is that the damages are excessive. The plaintiff had all the toes taken off his right foot. He had a compound fracture of his right leg, which was badly injured. He remained in bed after the accident for ten weeks, and was treated for nearly a year and a half. During that time he was very weak, and suffered a great deal, and for a time was helpless. The foot never got thoroughly well. The damages assessed by the jury are very large. Counsel for the plaintiff, in his closing argument to the jury, persistently, and despite the efforts of the court to stop him, used language well calculated to excite and prejudice the jury against the defendants, as receivers of a railroad corporation, by charging a failure to put men on the stand as witnesses, by stating that he would not

retract after the court had ruled that his language was improper, by stating that he made his statement in good faith, and stating that the conduct of the defendants was strange, in not putting men on the stand as witnesses, and that railroads had "a certain coercive method  .  ▪  .  of calling men in to make statements." Then, after being commanded by the court to stop, and being told that his language was improper, he continued:

"I predicate it on this: It is a matter of common knowledge.  A lot of things everybody knows is a matter of common knowledge.  The court will take judicial notice, and every man in the community will take notice, that corporations do get men to do these things.  It is a matter the court ought and the jury ought to take notice of without positive proof.  Railroads have been given special rights and franchises.  It is what he would be entitled to if it were you or your boy."

Such conduct is not tolerated from members of the bar in this state, and cannot be from attorneys appearing *ex gratia*. *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 361, 362; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157; *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564; *Taylor v. C. & N. W. R. Co.* 103 Wis. 27. Upon the record in this case, and in view of such remarks of counsel, we must hold that the damages assessed were greatly excessive, and that the plaintiff should not be allowed to recover more than $5,000 as damages.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial, but with the option on the part of the plaintiff, to be exercised within thirty days after the *remittitur* from this court is filed in the trial court, to remit, in writing, from the verdict, all damages in excess of $5,000, and file such remission with the clerk of the trial court, in which event judgment is to be entered thereon for the plaintiff for $5,000 damages, and the costs and disbursements in the circuit court.