Montanye, by guardian *ad litem*, Respondent, vs. North-
ern Electrical Manufacturing Company, Appellant.

*November 17, 1905—January 30, 1906.*

*Master and servant: Actionable negligence: Defective machinery: Ab-
normal action: Instructions to jury: Court and jury: Special
verdict: Cross-examination: Argument of counsel: Prejudicial
error.*

1. In an action for personal injuries to a servant, evidence of ab-
normal action of a machine can only be the basis of an infer-
ence tending to show an insufficiency in the construction and
repair of the machine as the producing cause of the injury,
which is conclusively rebutted by evidence showing that the
machine was free from all discoverable defects, and hence, on
such evidence alone, no grounds exist on which the jury can
find that any defect existed in the machine which the master in
the exercise of ordinary care ought to have discovered.

2. Where evidence of alleged defects in a machine would not reason-
ably admit of an inference that such defects caused the abnor-
mal action of the machine, it is error to refuse a requested in-
struction, in substance, that the evidence bearing on such de-
fects was not sufficient to sustain a finding that the machine
was defective, and that no want of ordinary care could be im-
puted to defendant with respect thereto as the cause of the
injury.

3. Where it is made to appear that the abnormal action of a ma-
chine, in the operation of which a servant was injured, might
result from a specific defect, and the evidence on the subject is
conflicting, the court should submit to the jury the question of
the master's negligence on that ground.

4. In an action for personal injuries received in operating a ma-
chine it is not error to refuse to submit, as part of a special
verdict, questions covering different phases of the evidence
concerning the nature of the defects, if the machine was found
defective in construction or repair, since they required the jury,
in answering the general and proper questions respecting the
alleged negligence of the defendant, to state the specific grounds
for their findings.

5. A master's duty to a servant requires that he exercise reasonable
care in furnishing reasonably safe instruments and that he ex-
ercise a like degree of care in making repairs.

6. A party should not be deprived of his right to cross-examination by so limiting its scope that the value and weight of the evidence given on the direct examination may not be fully tested.

7. In an action for injuries to a servant received in operating a machine, the court, jury, and both parties, on plaintiff's request and defendant's assent, viewed and inspected the machine in operation at defendant's shop. No request was made by plaintiff for the production in court of the machine or any of its parts, and defendant made no offer of it or any of its parts as an exhibit during the trial. The machine was installed and in use in defendant's factory, its size and weight evidently made it difficult to transport, and detachment of its parts would prevent its use. *Held*, that it was error to rule that it was justifiable for plaintiff's counsel to argue that such nonproduction was evidence tending to refute defendant's claim that the machine was free from all discoverable defects.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The plaintiff entered defendant's employ on May 2, 1904, and while operating a punch press in defendant's shops was injured on June 9th following. The defendant is a corporation engaged in the manufacture of electrical appliances. The machine which plaintiff operated at the time of the accident is known as the Bliss Press No. 20. It was installed in defendant's shops in February, 1902. In so far as the record discloses it was of standard and approved design and construction and such as is in common use by manufacturers. It is operated by an independent electric motor connected with the fly wheel of the press, which revolves upon a shaft that is stationary when the press is not in operation. The main operating parts of the press rest on and are held in place by a heavy frame, and consist of the fly wheel, a crank shaft, a drop punch, a table and die, and the brake. The parts employed in putting the machine in action consist of a treadle, a treadle spring, treadle rods combined with a rocker, a latch to which is joined a latch spring, a trigger, and trigger spring. The trigger is integral with a clutch placed in a groove of the shaft on which the fly wheel revolves. In operating the ma-

chine the communication of power from the motor rotates the fly wheel upon the stationary crank shaft. To put the punch in operation the person manipulating the machine presses down the treadle with his foot. This draws down the lower treadle rod, which is connected with the treadle lever below and the rocker arm above. The rocker arm is thereby depressed, and with it the upper treadle rod attached to the rocker arm at its lower end and to the arm of the latch at its upper end. This movement draws down the latch arm, and throws the latch out of engagement with the trigger. This release of the trigger permits the trigger spring to move the trigger, which turns and throws the clutch out into one of two grooves of the fly wheel, thereby engaging the wheel and the crank shaft, causing it to rotate and the punch attached to the crank of the shaft in turn to drop and rise at each turn of the wheel and shaft. When the machine is running the shaft makes 120 revolutions a minute, thus making the punch drop at the rate of 120 times per minute while it continues in operation. Upon removal of the pressure from the treadle, the power on the treadle and the rocker arm is reversed by means of a treadle spring, which lifts the treadle lever, and pushing the rods up throws the latch into place so that it will engage with the trigger, thereby disengaging the clutch from the fly wheel, causing the shaft to stop with the crank in an elevated position, and holding the punch suspended above the die table of the press. The stopping of the shaft and the holding of the punch are designed to occur automatically in the normal operation of the press. In using the press for making disks and doing similar work the person manipulating the press places the material on the die, presses the treadle with his foot, and then releases it at once. This drops the punch, raises it again, stops it automatically, and holds it there until it is dropped again by throwing these operative parts of the machine into action again by pressure on the treadle. The dies used are of different kinds to meet the

various wants for different products. Two of them are at-
tached at a time, one to the table and another to the punch.
The latter drops on to the material placed on the lower and
stationary one. ' The space between the dies, when the punch
is lifted to its full height, is about three inches.

The plaintiff had been employed in several manufacturing
establishments as an apprentice, and with a view of obtaining
practical knowledge of machines and their operation had
worked about and with machinery from August, 1902.    He
had worked with a punch press like the one in question, but of
a smaller size.    It appears that plaintiff had the intelligence
to comprehend his work and to understand in a general way
the nature of his employment and the liability to injury from
dangers apparently incident to it.    He received no special
instructions concerning the danger incident to running the
press.    He testified that defendant's department foreman
showed him how to place the material to be run through the
press on the lower die, and to trip the press, and to remove
the product with the hands, and that he did the work in the
way in which the foreman did it in showing him.    This tes-
timony is contradicted by the foreman.    Plaintiff states that
he worked at the press on Monday, punching copper seg-
ments; that he continued working there on Tuesday, making
mica segments until about 9 o'clock in the forenoon, when
the punch dropped repeatedly without pressure on the treadle;
that he called the foreman's attention to this abnormal opera-
tion, as he had been instructed to do; that the foreman then
cut off the power, adjusted some of the parts of the machine,
and directed plaintiff to proceed with the work; that he did
so, and that at the first operation the punch dropped twice
without stopping.    This occurred in the presence of the fore-
man, who again made further adjustments and again directed
plaintiff to proceed with his task, telling him that the ma-
chine was all right.    He worked at the press on Wednesday
until a part of the punch broke.    The foreman was notified of

this, and he removed parts of it for repair, and set plaintiff at other work for the remainder of the day. On Thursday, June 9th, plaintiff was directed by the foreman to work at the press making disks, and was assured by him that the machine was set up for the job and that it was all right. He continued the work, with the exception of about an hour spent at other work, until 11:15 o'clock, when he tripped the press in the usual way to cut a disk out of a piece of tin placed in the lower die; the punch dropped, but the lock failed to hold and stop it automatically after being elevated on the first revolution, and the punch dropped again a second time before stopping, without any pressure having been applied to the treadle. The second drop of the punch caught his hand, and severed parts of it.

Plaintiff was the only person who observed the operation, and his testimony as to the second dropping of the punch is as follows:

"*Q.* Now, at the time you were injured state whether or not it dropped the second time rapidly or slowly. *A.* Dropped rapidly. I had to put my hand under to get the work out, and that is the position my hand was in when the punch dropped. I hadn't had time to draw my work out."

On cross-examination, in speaking of the abnormal dropping on a prior occasion after the foreman had been notified and had adjusted parts of the machine, he states:

"After he [the foreman] tried it a couple of times it worked all right, and I went to work. *The first time* I put my foot on the treadle it dropped again. It did not continue to drop that time; just dropped twice, that is all. *Q. Just the same as it did the time you hurt your hand later? A.* Yes, sir."

He stated that the pieces of tin for making disks, used by the foreman in showing him how to run the press and to do his work, were placed on the die with the hands, and that the disks were removed by hand after the punch had dropped and returned to its stationary position; that he did the work

in this way when he was injured; that the disks and rims of tin left as waste were of such size, shape, and in such position on the die that it was necessary to put his hand under the area of the cutting die of the punch in order to remove them. This is denied by defendant's experts on the subject.

Evidence was also adduced bearing on the following questions: (1) That the treadle latch attached to the frame of the machine, over the treadle, might possibly have become loosened and momentarily have held the treadle down, and after the removal of the foot from the treadle have caused the second drop of the punch. (2) That the trigger spring and clutch were gummed from accumulations of oil and dust so as to retard their action and to prevent them from performing their functions in the normal operation of the press. (3) That the treadle rod, leading from the treadle lever to the rocker arm, was attached to the rocker arm by a set-screw, and that this set-screw was worn loose and was liable to permit the treadle rod to slip and move in the rocker and result in defective operation of the latch by failing to engage the trigger, and thereby bringing about the regular automatic stopping of the punch after it had dropped and risen. (4) As to the absence of a lock nut on the set-screw, to hold it in place after being firmly set to hold the treadle rod. Proof of abnormal operation of the press was given by a number of witnesses besides plaintiff, and was to the effect that in operating the machine at different times before the accident it had made a second drop after the removal of the foot from the treadle, and that defendant's officers and agents had been informed of such defective operation. Defendant adduced evidence showing that the machine was of approved design and construction and the same as those commonly and generally used by manufacturers as standard, and adduced the evidence of its superintendent, department foreman, and others tending to show that the machine was free from discoverable defects which might cause the defective operation complained of.

A number of exceptions were preserved to rulings on evidence, on refusals to submit requested questions in the special verdict, on refusals to give instructions and to instructions as given, and to remarks by plaintiff's counsel to the jury. The particular matters recited in the exceptions will be referred to in the discussion, so far as may be necessary.

The case was submitted to a jury and the following verdict was rendered:

"(1) Was the machine in question so defective or out of repair at the time of the accident as to render the punch liable to fall a second time without pressure upon the treadle? *Answer.* Yes. (2) If your answer to question No. 1 be 'Yes,' then did the defendant have such notice of such defect or want of repair that by the exercise of ordinary care and diligence it might have remedied it before the plaintiff was injured? *A.* Yes. (3) If your answers to questions 1 and 2 be 'Yes,' then was the defendant guilty of any want of ordinary care in permitting the use and operation of said machine by the plaintiff in the condition it then was? *A.* Yes. (4) Did the defendant instruct and caution the plaintiff before he began work upon the machine in question as to the dangers incident to its operation? *A.* No. (5) Was the defendant guilty of any want of ordinary care in relation to instructing and cautioning the plaintiff as to the dangers incident to the operation of the punch press in question? *A.* Yes. (6) Did the defendant provide plaintiff with any tools or appliances for the purpose of taking work out of the machine? *A.* No. (7) If your answer to question No. 6 be 'No,' then was the defendant guilty of any want of ordinary care in failing to furnish such tools or appliances? *A.* Yes. (8) If your answer to questions 1, 2, and 3 be 'Yes,' then was such want of ordinary care on the part of the defendant in allowing the machine to be used in such defective condition or while in want of repair the proximate cause of the injury? *A.* Yes. (9) If your answer to question 5 be 'Yes,' then was the failure of the defendant to instruct and caution the plaintiff as to the dangers incident to the operation of the machine the proximate cause of the injury? This question is not to be answered if your answer to question 8 be 'Yes.' (10) If your

answer to question 7 be 'Yes,' then was the failure of the defendant to furnish the plaintiff with tools and appliances for the purpose of taking the work out of the machine the proximate cause of the injury? If you answer questions 8 or 9 'Yes,' this question should not be answered. (11) Was there any want of ordinary care on the part of the plaintiff which contributed to produce the injury? A. No. (12) Did the plaintiff assume the risk incident to the operation of the machine in the manner in which he operated it? A. No. (13) What sum will compensate the plaintiff for the injury which he suffered? A. $5,000."

Defendant moved to strike out the affirmative answers to questions 1, 2, 3, 5, 7, and 8 because they were contrary to the evidence, and that the court answer them in the negative; also to strike out the negative answers to questions 11 and 12 because they were contrary to the evidence, and that the court answer them in the affirmative; and for reduction of the damages found, as not supported by the evidence. This motion was denied and exceptions taken. Defendant also moved for a new trial upon the grounds covered by these specific exceptions. This was denied. Judgment was awarded in plaintiff's favor on the special verdict for the amount assessed as damages and for costs. This is an appeal from such verdict.

For the appellant there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler.*

For the respondent there was a brief by *Gilbert & Jackson,* and oral argument by *Russell Jackson.*

The following opinion was filed December 12, 1906:

SIEBECKER, J. It is urged that there was no evidence showing negligence in the particulars alleged. Defendant claims that the accident is alleged to have occurred through the abnormal dropping of the punch, with the application of pressure to the treadle after the punch had returned to its stationary position, that it then dropped unexpectedly, and thereby caused the injury. Plaintiff's counsel contest this

claim in their oral argument though their brief seems to go upon this theory. The question must be settled by the facts actually disclosed by the evidence. The record shows that plaintiff is the only person who speaks on this subject, and his statement is directly to the effect that the abnormal action of the machine at the time of the accident consisted in the second revolution of the crank shaft and a second dropping of the punch, without its automatically assuming a stationary position between the drops after the pressure had been removed from the treadle. Upon this basis of fact the question arises, Does the proof tend to show actionable negligence? Defendant contends that it does not, upon the ground that the only evidence of negligence presented is that of the alleged abnormal operation of the machine at the time of and at times previous to the accident. A number of persons testified that from several months to some days before the accident, while they had operated the punch or had seen it operated by others, it had unexpectedly failed in its automatic and regular action to take the normal stationary position after removal of pressure from the treadle, and had made one or more continuous abnormal drops. There is evidence tending to show that the shop foreman's attention had been called repeatedly to this abnormal action before the accident, and that he sought to remedy it by readjustment of its operating parts, and that he assured the person manipulating the press that it was in a proper condition for use. Considerable evidence was adduced to the effect that this press was of standard and approved design, and was in common and general use by manufacturers for purposes like to those for which this one was being used by defendant; that, so far as defendant's agents and servants knew, it operated properly before and from and after the time of the accident. It is urged that this state of the evidence of abnormal action of the machine can only be the basis of an inference tending to show an insufficiency in the construction and repair of the machine as the

producing cause of the injury complained of; that this was conclusively rebutted by the evidence showing the machine was free from all discoverable defects; and that therefore no grounds exist on which the jury could find that any defect existed in the machine which the defendant in the exercise of ordinary care ought to have discovered. The rule of law invoked by defendant as controlling upon this branch of the case has been observed and adhered to in numerous decisions of this court. In *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434, speaking of this subject, the court said:

"Undisputed proof of freedom of the machine from all discoverable defects, either in construction or repair, effectually overcomes any inference or presumption arising from the happening of the accident, so as to leave no question in that regard for the jury."

See, also, cases cited, and *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *Klitzke v. Webb,* 120 Wis. 254, 97 N. W. 901.

Plaintiff produced evidence tending to show that the operation of the clutch and trigger spring was interfered with by the gumming of these parts; that there was a wearing and loosening of the set-screw in the rocker arm holding the treadle rod; that this screw was not fastened by a lock nut; and that the treadle latch operated defectively, and claims that these defects in the construction and repair of the press were the cause of the accident; and that defendant could have discovered them in the exercise of ordinary care. It is obvious that the gumming could in no way cause the abnormal dropping of the punch, because its only effect would be to prevent engagement of the clutch and fly wheel; until this occurred the punch would be stationary. The specified abnormal action of the punch must result from a failure to disengage the clutch and fly wheel, and to this the gumming could in no way contribute. The theory that the absence of the lock nut on the set-screw, and the way the treadle latch was fastened up to prevent it from holding down the treadle, thereby causing

the punch to continue in action until it was removed, could in any way have caused the abnormal action complained of, is not sustained by the evidence. The evidence on these points would not reasonably admit of an inference that these alleged defects caused the abnormal action. Such an inference is mere conjecture and falls far short of the reasonable certainty required to show the real cause of the accident. As to these alleged grounds of negligence the court should have instructed the jury, as requested, that the evidence bearing on them was not sufficient to sustain a finding that the machine was defective, and that no want of ordinary care could be imputed to defendant with respect thereto as the cause of the injury. The failure to give the requested instructions or their equivalent was error. It permitted the jury to predicate their finding upon any or all of these phases of the evidence, and therefore renders the result of the trial inconclusive, in that the jury may have founded their finding of negligence upon a ground not supported by the evidence. *McClarney v. C., M. & St. P. R. Co.* 80 Wis. 277, 49 N. W. 963; *Davis v. C., M. & St. P. R. Co.* 93 Wis. 470, 67 N. W. 16, 1132.

The remaining alleged specific defect of the machine pertains to the worn and loose condition of the set-screw and treadle rod. There is evidence tending to sustain the claim that these conditions existed at the time of the accident. It is strenuously urged by the defendant that there is no explanation as to how these conditions could cause the abnormal action of the punch. We are led to the conclusion that it sufficiently appears from the evidence of witnesses qualified to speak on the subject that the looseness of the set-screw and the slipping of the rod in the rocker arm, when the operating parts of the machine were engaged in tripping and automatically arresting the punch and holding it in its stationary position, might cause the failure of the latch to return to its position and to engage the trigger at its first revolution, and thus by permitting two or more revolutions of the crank shaft

cause the unexpected drop of the punch after the pressure on the treadle had been removed. Some of the defendant's experts admitted that if the latch failed to return quickly this abnormal action might follow. Since it was made sufficiently apparent that the slipping of the treadle rod in the rocker arm, on account of the imperfect set-screw, might result in not returning the latch to such a position as to engage the trigger, this question should have been submitted to the jury upon the conflicting evidence on the subject, and the court should have submitted the inquiry of defendant's negligence upon this ground.

An exception is urged to the refusal of the court to submit questions covering different phases of the evidence concerning the nature of the defects, if the machine was found defective in construction or repair. We think they were properly refused, because they required the jury, in answering the general and proper questions respecting the alleged negligence of defendant, to state the specific grounds for their findings. *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816, and cases cited.

Error is assigned upon instructions given defining the measure of the master's duty. This duty requires that he exercise reasonable care in furnishing reasonably safe instruments, and that he exercise a like degree of care in making repairs. Another exception of this nature pertains to the definition of ordinary care of the defendant as such care as is exercised by ordinarily careful and prudent persons of plaintiff's age, intelligence, experience, and knowledge. The court manifestly misapplied this definition to the defendant, when it was intended to refer to plaintiff. The error is not likely to occur on another trial.

The exceptions to rulings on evidence relate mainly to infringements on the rights of cross-examination. Since a new trial must be granted, discussion of them is unnecessary. The exceptions do not present questions which show a mistaken

view of the principles, but relate to the application of well-established principles in the particulars suggested. The cross-examinations by defendant appear to have been too much restricted. A party should not be deprived of this right by so limiting the scope of the cross-examination that the value and weight of the evidence given on direct examination may not be fully tested.

It is further contended that counsel was permitted to indulge in improper argument to the jury, over defendant's objection. It appears that plaintiff requested a view of the machine at defendant's shops, and that this was assented to by the defendant; that the court, the jury, and counsel for both parties viewed and inspected the machine in the shop, and that it was operated at plaintiff's request in their presence; that plaintiff did not request the production of the machine or of any of its parts in court; and that defendant made no offer of it or of any of its parts as an exhibit during the trial. The machine was installed and in use in the factory; its size and weight evidently made it difficult to transport, and detachment of its parts would have prevented its use. Under these circumstances plaintiff's counsel argued that such absence of the machine and its detachable parts was evidence tending to show the defendant guilty of the negligence charged. The court upon objection to such comment ruled that defendant had the right but was not compelled to produce the machine, and that counsel justifiably argued that such nonproduction tended to refute defendant's claim that the machine was free from all discoverable defects. The serious effect of such comments before a jury is perfectly obvious. Was it proper argument under the circumstances? We cannot regard it as within the field of legitimate argument. It is a charge that defendant withheld evidence which would have supported plaintiff's claim and have refuted defendant's claim concerning the condition of the machine. Such an imputation was refuted by defendant's conduct in freely sub-

Montanye v. Northern Electrical Mfg. Co. 127 Wis. 22.

mitting to a full inspection of the machine and the operation of it in the presence of the jury and the opposite party and his counsel. It is not suggested that plaintiff was, in any particular, deprived of the fullest opportunity to examine the machine; nor did he ask that it or any of its parts be produced by defendant as an exhibit upon the trial. It appears that defendant had done everything within reasonable requirement to .expose the machine to the view of the court and the jury as evidence of its condition at the time of the accident, and this conduct fully rebutted any presumption that it withheld the machine or any of its parts as evidence from sinister motives. The proceeding complained of was highly prejudicial under the circumstances, and constituted reversible error. *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707, and cases cited; 1 Wigmore, Evidence, § 285 *et seq.; Bates v. Morris,* 101 Ala. 282, 13 South. 138; *Crawford v. State,* 112 Ala. 1, 21 South. 214.

Error is assigned ·upon the refusal of the court to direct a verdict in defendant's favor upon the ground that under the undisputed facts it appeared that plaintiff had assumed the risk of this injury as incident to his employment and that he was guilty of contributory negligence. Upon this question the justices are equally divided in opinion. In accordance with the established practice in the treatment of such a situation no opinion will be filed on this question.

*By the Court.*—Judgment reversed, and the action remanded for a new trial.

A motion for a rehearing was denied January 30, 1906.