LILLIS, Respondent, vs. BEAVER DAM WOOLEN MILLS, Appellant.

*February 4—February 22, 1910.*

*Master and servant: Injury from unsafe machinery: Special verdict: Definiteness: Abnormal action of machine: Discoverable defects: Evidence: Questions for jury: Assumption of risk.*

1. In an action for personal injuries sustained by plaintiff while operating a machine which the complaint alleges was unsafe in several particulars, the special verdict should be so framed that it will show in which, if any, of such particulars the jury find that the machine was unsafe.

2. Where injuries to an employee are claimed to have been caused by abnormal action of a machine in starting up suddenly without apparent cause after the drive belt had been shifted to a loose pulley and the machine had come to a full stop, the mere statement of plaintiff that it so started is not sufficient to sustain an inference that there was a discoverable defect in the

machine, as against evidence, otherwise undisputed, that the machine had been used for years without any abnormal action and that it·was of proper and safe construction and in good repair.

3. An adult of ordinary intelligence and experience who has learned from working in and about a woolen mill and its machines the usual conditions and hazards of the business, must be deemed, as matter of law, to have known the risk incident to putting his hand into a machine (in this case a mixing picker) while it was running, to remove clogging material.

APPEAL from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

This is an action to recover damages for the loss of a hand, which was so mangled as to require its amputation, the injury having been received while the plaintiff was engaged in removing some clogging material from a mixing picker, a machine operated by him for the defendant in its mill.

The material to be run through the machine is placed upon a feed apron, which was an endless belt of slats about four feet wide. The material is carried forward by the apron into a series of feed rollers, which were studded with teeth to catch the material and carry it forward. The material is delivered by this series of feed rollers into a large cylinder, four feet in diameter, where the stock is further operated on, and is then carried into a spout about six inches wide by thirty inches in length, through which it is forced by the air from a fan run in connection with the rest of the machine. Occasionally, while the machine is being operated, the stock material will accumulate between the fan and the large cylinder and the machine become clogged. As originally constructed the machine had a lever for stopping the feed apron and the feed rollers while the rest of the machine continued to run, and ordinarily, when the machine became clogged, if the feed apron and the feed rollers were stopped by the use of this lever and the feeding of more material into the machine was thus prevented, it would clear itself of the clogging

material.    If the machine was not able to clear itself in this way, it was necessary to stop all parts of the machine, remove some or all of the feed rollers, and the operator of the machine would then be able to see where the clogging material was lodged and could reach in and remove it with his hand. To remove the clogging material in this way took considerable time.    The machine was so operated for several years in the defendant's mill.

In May, 1903, the defendant installed another machine in the room in which the mixing picker had been operating, and in rearranging the room the mixing picker was moved into an alcove, which would hold it with but little open space about it.    In thus placing the machine it was found that the drive belt between the drive shaft and the drive wheel of the machine on the shaft of the large cylinder would interfere with the operation of the lever controlling the feed apron and the feed rollers, and the lever was therefore removed. A spout at the back of the machine, two and one-half to three feet in length, through which the stock material was blown from the machine by the fan, was also removed, and the stock material was discharged thereafter into an adjoining room through a hole in the wall, close to which the machine stood. When the machine became clogged in the new position the operator would throw the drive belt from the drive pulley to a loose one and thus throw off the power from the whole machine.    He would then wait until all parts of the machine had come to a stop and go into the room into which the stock material was discharged from the machine.    Reaching through the hole in the wall he would put his hand past the fan and take out the clogging material from between the fan and the large cylinder.    This could be done with safety when the machine was at a standstill.

Plaintiff was sixty years of age in June, 1905.    He had lived in Beaver Dam for forty-two years and had worked off and on during that time in the defendant's mill.    He went

to work at this mixing-picker in May, 1905, and worked at it until October 17, 1905. When he started work at this machine he was instructed as to its operation and of the way in which clogging material was then removed from the machine. On October 17, 1905, the plaintiff received the injury for which he seeks to recover damages. On the trial of the action he testified that while operating the machine it became clogged. He shifted the drive belt from the drive pulley to the loose pulley and waited three, four, or five minutes until all of the parts of the machine had come to a standstill. He then went into the discharging room and reached through the wall and the fan to the clogging material. He removed two handfuls of the material and reached in for another handful, when the machine suddenly started. His hand was caught by the hooks on the large cylinder, and, his arm being caught and drawn into the machine by the starting of the fan, his hand was so severely mangled as to require amputation.

On the trial of the action a fellow workman in the room at the time of the accident testified that the plaintiff had shifted the drive belt to stop the machine. He also testified that no one started the machine after the plaintiff went into the discharging room. There was no evidence as to whether or not the machine continued to run after the plaintiff was injured and came back from the discharging room. There was evidence that the machine had been operated from May, 1903, to the time of the accident in the same place and in the same condition as it was at the time of the accident; that during that time it had properly performed the work for which it was designed, and that it had never started to run without apparent cause, as it is alleged it did in the instant case. There was evidence, also, that the belt which drove the fan had fallen from the drive wheel to the floor.

The court answered the first question of the special verdict in the affirmative. The question was whether or not the

plaintiff was injured by having his left hand caught by the cock-spur hooks in the large cylinder of the mixing picker in the defendant's mill on October 17, 1905, while he was attempting to clear away the stock from between the fan and this cylinder of the machine.

The jury found by the special verdict that the mixing picker machine was not a reasonably safe appliance for the use of the plaintiff, that the unsafe condition was known to the defendant, and that this condition was the proximate cause of the plaintiff's injury. The jury also found that the plaintiff as a reasonable person of his age, intelligence, and experience did not know and appreciate the peril and danger to which he exposed himself by putting his arm and hand into the machine in the manner and under the circumstances disclosed by the evidence, and that he could not be presumed to have such knowledge and appreciation of the danger. They assessed the damages at $3,591.68.

The defendant excepted to the action of the court in permitting plaintiff to amend his complaint. In view of the grounds upon which the decision of this court is based, this and other exceptions are immaterial and the details thereof will not be stated here.

The defendant appeals from the judgment entered upon the verdict found by the jury.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent the cause was submitted on the brief of *Malone & Miller.*

SIEBECKER, J. The plaintiff seeks recovery upon the ground of defendant's negligence. It is not clear from the record upon what ground of negligence the case was submitted to the jury by the court. The court submitted an inquiry as to whether the machine as located at the time and place of the accident was reasonably safe for the plaintiff to

perform his services, and instructed the jury that they must determine from the evidence whether it was a reasonably safe machine. The question and instructions do not specify wherein the defendant is charged to have been negligent or what is claimed to have made this an unsafe machine. An examination of the pleading leads us to the conclusion that the plaintiff asserts that this was an unsafe machine because of the removal of the lever by which the operation of the feed apron and rollers could be controlled, because of the removal of the discharge spout, or because the machine furnished by the defendant was of defective construction or was in such want of proper repair that an abnormal action resulted and the machine started up after the drive belt had been removed from the drive pulley and the machine had been brought to a standstill. This state of the case required the court to frame a special verdict to meet these different issues, if he determined that there was credible evidence tending to support any of the alleged charges of negligence. The submission of the general question as to whether the machine was a reasonably safe one, accompanied by instructions which do not point out in what respect the jury must find negligence to exist to warrant an affirmative answer to such a question, renders the verdict too uncertain upon the litigated issue respecting a defect in the machine, and we cannot ascertain wherein the jury found the machine to be actually defective and unsafe. Did the jury find that the machine was unsafe and dangerous on account of the removal of the lever connected with the feed apron and rollers, because of the removal of the discharge spout, thus exposing the operator to unnecessary danger in cleaning out the clogged wool, or was the machine found defective in construction or for want of repair? The course of procedure adopted leads to dangerous uncertainties, because the determination of the issues framed by the pleadings is left too indefinite and uncertain. However, we need not consider this further, since

the appellant claims that there is no evidence in the case to support the jury's finding upon any of the grounds of the alleged unsafe condition of the machine. The removal of the discharge spout in no way impaired the use of the machine, nor could it in any way have anything to do with the alleged abnormal starting up of the machine while the plaintiff was clearing out the wool that clogged it. Hence it need not be considered as involved in the cause of the plaintiff's injury.

The plaintiff claims that he was injured by the abnormal action of the machine, in that the large picker cylinder and the fan suddenly and unexpectedly started to operate after he had brought the machine to a standstill and while he had his hand near these parts in order to remove the wool that clogged their operation. The question arises: Is there evidence tending to show that the machine was defective and that such defect caused an abnormal starting of the machine after, as plaintiff claims, it was brought to a standstill? We have examined the evidence with much care to ascertain how the removal of the lever by which the feed apron and rollers were set in motion or stopped could in any way have been a defect related to the abnormal movement of the machine which caused plaintiff's injury. Confessedly its only purpose was to control the feed apron and rollers. It had no connection with the appliance by which the main drive belt was shifted onto or off from the drive pulley on the large cylinder shaft, by which the machine was set in motion. Its absence or presence could in no way have started or stopped the main cylinder and fan and have caused plaintiff's injury. The case is therefore wholly wanting in proof that the omission of this lever constituted a defect in the machine which could proximately have caused plaintiff's injury.

This brings us to the question: Is there evidence of some other defect in the machine which the defendant permitted to exist and which could have caused plaintiff's injury? The facts show that the machine is of the type customarily

used for the purposes for which the defendant used this one, and that it has been used from May, 1903, to the present time in the same condition and location. There is no evidence that it was defectively constructed, out of repair, or that there was a discoverable defect in the machine, aside from the plaintiff's statement to the effect that on the day in question it unexpectedly started without apparent cause, after he had removed the drive belt from the drive pulley and shifted it onto the loose pulley. There is no evidence of any discoverable defect in the drive belt, pulleys, or shifting apparatus connected therewith which were used in starting and stopping the machine. No evidence was adduced to contradict the showing that the machine was of proper and safe construction and in good repair, except the single statement of the plaintiff that the large cylinder and the fan started abnormally at the time in question. The respondent relies on this evidence to show that the defendant did not provide a reasonably safe appliance for its servants. This evidence is not of sufficient probative force and weight to sustain an inference that there was a discoverable defect. If the facts be assumed to be as claimed, that the cylinder and the fan unexpectedly started to revolve after the plaintiff had shifted the power belt to the loose pulley and the machine had come to a standstill and that there was an unexpected movement, still this is not sufficient to show that there was a discoverable defect which ought to have been ascertained by the defendant before the accident. It would have been impossible for the defendant to learn of any defect, for there was no evidence of any defect prior to the accident. On the contrary, the evidence is that it had been used for years without any abnormal action, and that so far as discoverable it was in a proper condition of repair and construction. Under these circumstances the rule is that:

"Undisputed proof of freedom of the machine from all discoverable defects, either in construction or repair, effect-

ually overcomes any inference or presumption arising from the happening of the accident, so as to leave no question in that regard for the jury." *Montanye v. Northern E. Mfg. Co.* 127 Wis. 22, 105 N. W. 1043; *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 114 N. W. 841.

From these considerations we are led to the conclusion that the court erred in refusing defendant's request to direct a verdict in its favor upon the ground that there was no evidence tending to show that the defendant negligently furnished an unsafe machine. This disposes of the case, and the other errors assigned need not be considered.

It may be well to call attention to the following cases bearing on the propriety of submitting questions 5 and 6 of the special verdict, as to whether plaintiff knew and appreciated or ought to have appreciated the danger incident to putting his hand into the machine to remove the clogging material, as he did. It appears that he had learned from experience in working in and about the mill and its machines the usual conditions and hazards accompanying the business. He appears to be a man of ordinary intelligence and experience and must be deemed to know the risks incident to open and obvious dangers, such as coming in contact with a running machine like the mixing picker. The danger of injury to an operator from putting his hand into this machine, as plaintiff did, while it is running, is manifestly so open and obvious that an adult of ordinary intelligence and experience will be presumed to have knowledge thereof. It is not a question for determination by a jury. *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596, 69 N. W. 352; *Larsson v. McClure,* 95 Wis. 533, 70 N. W. 662; *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27, 71 N. W. 814.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the action.