**PAYNE, Director General of Railroads, v. HOLDER.**

No. 11938—Opinion Filed Oct. 9, 1923.

**1. Master and Servant — Liability for Injuries to Servant -- Defective Appliances —Proof.**

To hold the master responsible, a servant must show that the appliances and instru-

mentalities furnished were defective. A defect cannot be inferred from the mere fact of an injury; there must be some substantive proof of negligence, knowledge of the defect, or some omission of duty in regard to it must be shown.

**2. Same — Knowledge of Defects.**

When a servant receives an injury from a latent defect in an appliance, evidence to establish the master's liability must justify the inference that he either knew, or by the exercise of the care required of him, might have known of the defect, but he will not be responsible for a defect which the most careful scrutiny would not have disclosed.

**3. Same — Negligence — Insufficiency of Evidence.**

The evidence examined, and held, that it does not disclose actionable negligence on the part of the defendant, and that the demurrer to the evidence should have been sustained.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by Christian Holder against John Barton Payne, Director General of Railroads, to recover damages for personal injuries. Judgment rendered for plaintiff, and defendant brings error. Reversed.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

Maben & Pitman, for defendant in error.

Opinion by PINKHAM, C. This is an action by defendant in error, as plaintiff, against plaintiff in error, as defendant, in superior court of Pottawatomie county, to recover damages for personal injuries suffered on account of the alleged negligence of the Director General of Railroads. The parties will be referred to as they appeared in the trial court.

The petition alleges, in substance, with reference to the negligence of the defendant, that the plaintiff was employed by the defendant as a boiler maker in the shops of the Chicago, Rock Island & Pacific Railway Company, in the city of Shawnee, Okla., and that on said date it became and was the duty of the plaintiff to take an air hammer and pin out the flues of one of the defendant's engines; that it was and became necessary to make a requisition for said hammer, and that the plaintiff did make a requisition for the same, and that plaintiff's helper, whose name is unknown to plaintiff, went to the tool room of the defendant and requested and made requisition of the keeper of said tool room for an air hammer,

and that the keeper of said tool room, an agent and servant of the defendant, supplied plaintiff's helper with the air hammer, which was thereafter used by the plaintiff.

That the air hammer is a complicated piece of machinery and the defects in the same are only discernible by careful examination, and plaintiff says that he received said hammer from the keeper of the tool room, and proceeded to use the same in furtherance of the work which he was required to do. That he was pinning out the flues of said engine when he sustained the injuries complained of. That the said air hammer is worked and put in motion by means of a trigger, and is stopped and controlled by means of a trigger, and plaintiff says that he put said air hammer in action and was proceeding with the work of pinning out said flues when it was and became necessary to stop the operation temporarily to go from one flue to another. That when plaintiff had pinned out the first flue and attempted to stop the operation of said hammer by means of said trigger that the machinery and appliances of said air hammer refused to work and operate, and refused to stop so that plaintiff could proceed with his work, and that on account of the same failing to stop when plaintiff used the trigger, plaintiff's hand was fastened between the hammer and the steam pipe and said air hammer proceeded to hammer and operate against the left hand of the plaintiff, mashing, bruising, and breaking said hand in the manner hereinafter set forth. That plaintiff had never used said hammer previous to said time and did not know of its defective condition, but plaintiff says that the defendant had said hammer in its shops and under its control, and that the same was in its tool room in charge of a tool house keeper, whose name is unknown to plaintiff, and that it was the duty of said keeper to make examination of said tools, and to know that they were in a reasonably safe condition for use by the plaintiff, as well as other employes of the defendant who might have occasion to use said tools, and plaintiff says that said hammer was wholly defective and out of repair, and that by reasonable inspection on the part of the defendant by its agent and servant, whose duty it was to inspect the same and keep the same in a reasonable state of repair, defendant could and should have known of the defective condition of the same. That the plaintiff relied upon the same being in a reasonably safe condition for use, and that while handling same plaintiff was in the exercise of due care and caution for his own personal safety; that the defendant negligently and

carelessly failed to furnish plaintiff with reasonably safe tools and appliances with which to do his work at said time and that such negligence was and did constitute the proximate cause of his injuries.

Defendant's answer, in addition to a general denial, for further and separate defense averred that if plaintiff was injured at the time and place mentioned in the petition, that any injuries received by him were caused wholly by his own negligence and want of care, and that such injuries were in no respect due to any negligence or want of care on the part of the defendant or its servants, agents, or employes.

Defendant further pleaded the defense of contributory negligence and assumption of risk.

For further reply plaintiff denied each, every, and all the allegations in said answer except such as are affirmatively alleged in plaintiff's petition.

On June 29, 1920, the cause proceeded to trial, resulting in a verdict in favor of plaintiff for $500, upon which a judgment was rendered. At the close of the evidence defendant demurred to the same, which demurrer was by the court overruled, to which defendant excepted. Defendant thereafter moved the court to instruct the jury to return a verdict in his favor, which motion was overruled, to which action of the court defendant excepted. In due time defendant filed his motion for new trial which was by the court overruled; the defendant excepted to the action of the court and gave notice of his intention to appeal to this court.

For a reversal of the judgment, defendant assigns the following specifications of error; first, the trial court erred in overruling the motion of defendant for a new trial; second, said court erred in overruling the demurrer of defendant to the evidence; third, said court erred in overruling the motion of defendant to instruct the jury to return a verdict in his favor; fourth, the verdict of the jury is not sustained by sufficient evidence and is contrary to the evidence; fifth, the verdict of the jury is contrary to law.

All of the assignments of error are presented together in the argument in defendant's brief.

It is the contention of defendant that the evidence is wholly insufficient to support the verdict of the jury, and the judgment of the court.

There is no conflict in the evidence. The only witness in the case was the plaintiff. The following are the facts:

The plaintiff was a boiler maker of about 16 years' experience. At the time of the injury he was pinning out flues in the front end of a locomotive boiler with an air hammer, with the aid of a helper. The helper brought the air hammer from the tool house and delivered it to the plaintiff. The plaintiff started to pin out the flues, and had pinned out three or four, when, in pinning out the fourth or fifth flue the injury occurred on acount of some unknown cause, when the plaintiff released the air "that is, when I took the thumb off the air hammer I naturally taken my weight off it too, and the thing kept hitting, the air would not shut off, kept hitting and my hand was pretty close to a steam pipe that comes around the front end of the smoke box, as they call it, and the air hammer beating that way, why, it just caught my hand between that steam pipe and the handle and that gun kept hitting on it." Before the plaintiff commenced to operate the air hammer he tested it and it worked all right; that the hammer worked all right on the other flues, and that he did not know what caused it to quit working on the occasion when it hurt his hand. That in operating an air hammer it is necessary to lean against it and put power and strength against it to hold it in place, and if this is not done the hammer will fly back, in which event the person operating the hammer would be liable to be injured.

Quoting from the plaintiff's testimony:

"Q. You say you operated that gun on three or four different holes or flues? A. I did. Q. And that then either on the fourth or fifth one it failed to work? A. It did. Q. When you released the trigger on it the times you were operating it at the previous flues it worked properly and then when you went to release it on the one it failed to work. How did you attempt to release, it, the same as you had before? A. Why, Judge, I taken my hand off the trigger and released my weight from it, you know, like you do when you get ready to go from one flue to another. When you release the air that stops the pressure, stops the hammer, or is supposed to stop it, and it would not release, you understand, and that is what it done, just in a jiffy, just in a second. Q. So—was that the same operation you went through with those other four? A. Yes, sir; just the same. "

The plaintiff further testifed that the defendant's company physician treated him once for the injury to his hand, and that he was at the time of the trial employed in a situation that did not require him to use an air hammer. Upon this state of facts the question arises, Does the proof tend to show actionable negligence? Defendant contends

that it does not for the reason that the evidence wholly fails to show that the air hammer in question was in any respect defective.

The law applicable to the undisputed facts in the record in well known; it has long existed and is undoubted. Palmer v. Wichita Falls & N. W. Ry. Co., 60 Okla. 205, 159 Pac. 1115; Smith v. Acme Milling Co., 34 Okla. 439-443, 126 Pac. 190; Wyman v. Chicago, R. I. & P. Ry. Co., 76 Okla. 172, 184 Pac. 758; Looney v. Metropolitan Co., 200 U. S. 486; Stephenovich v. Pittsburg & Baltimore Coal Co., 218 Fed. 604; Hope v. Natchez, C. & M. R. Co. (Miss.) 54 South. 369. These cases illustrate the principle upon which is founded the rule applicable to the facts presented in the case at bar, that, before plaintiff could recover it was necessary for him to have established, first, that the air hammer which he used was defective, and, second, that the defect was either known to the defendant or would have been discovered by the exercise of reasonable diligence on its part. We are impelled to say that the evidence, viewing it in the most favorable light for the plaintiff, wholly fails to meet either of these requirements. The mere fact that the plaintiff rceived an injury does not establish even prima facie the negligence of or breach of duty of the defendant. In Palmer v. Wichita Falls & N. W. Ry. Co., 60 Okla. 205, 159 Pac. 1115, it is said:

"The fact that a servant is injured in the course of his employment raises no presumption of negligence on the part of the master and there must be evidence to establish primary negligence in the matter before the servant can recover for injuries sustained in the course of his employment, nor can a recovery be had for negligence upon conjecture. There must be evidence of facts or circumstances from which the fact that the negligence of the master is the proximate cause of the injury is necessarily implied before a recovery can be had for injuries sustained by the servant."

If there was any defect in the air hammer it was a latent one. The plaintiff tested the appliance before using it and found it to be in good condition, he used it in pinning out three or four flues and experienced no difficulty. So far as the record discloses no defect was discovered in the appliance after the injury.

The inference of negligence on the part of the defendant is repelled by the fact that the defect, if any existed, in the air hammer which caused the accident, was a latent or concealed one which could not have been discovered by inspection.

There is not a line of evidence in the record that such defect, if any, was known or

could have been discovered by the defendant in the exercise of reasonable diligence.

"When a servant receives an injury from a latent defect in such appliances or places, evidence to establish the master's liability must justify the inference that he either knew or by the exercise of the care required of him, might have known of the defect, but he will not be responsible for the defect which the most careful scrutiny would not have disclosed." (The Essex County Electric Company v. Kelly, 57 N. J. L. 100.)

In the case of Vorbrich v. Geuder & P. Mfg. Co., 96 Wis. 277, 71 N. W. 434, the court said:

"Undisputed proof of freedom of the machine from all discoverable defects, either in construction or repair, effectually overcomes any inference or presumption arising from the happening of the accident, so as to leave no question in that regard for the jury."

In Wyman v. Chicago, R. I. & P. Ry. Co., supra, this court held:

"Where the servant in an action against the master avers in his petition, and supports the same by evidence, that the injuries received are due to latent defects in a bridge which collapsed, the master is not liable for negligence unless such latent defects were known to the master or would have been discovered in the exercise of reasonable diligence.

"The proposition that an inspection would have discovered the latent defects in the bridge is an affirmative one, and the burden of proof rests upon the servant. The doctrine of res ipsa loquitur does not apply between master and servant, and in case of accident to an employe the fact of accident carries with it no presumption of negligence, and it is an affirmative fact for the injured employe to establish the accident was the result of negligence of the employer."

In the case of Lillis v. Beaver Dam Woolen Mills, 142 Wis. 128, 124 N. W. 1011, the court said:

"Assuming the fact to be as claimed that the cylinder and fan unexpectedly started to revolve after the plaintiff had shifted the power belt to the loose pully and the machine had come to a standstill, and that there was an unexpected movement, this was not sufficient to show that there was a discoverable defect which ought to have been ascertained by the master before the accident; on the contrary, the evidence was that it had been used for years without any abnormal action, and that, so far as discoverable, it was in a proper condition of repair and construction."

For the reason stated herein, the judgment of the trial court should be reversed and the cause remanded, with directions to dismiss the same.

By the Court: It is so ordered.