MICHALSKI, by guardian *ad litem,* Respondent, vs. CUDAHY BROTHERS COMPANY, Appellant.

*November 20, 1912—February 18, 1913.*

*Master and servant: Negligence: Defective machinery: Cause of injury: Evidence.*

The piston and plunger of a sausage-stuffing machine, operated by steam in defendant's packing works, descended while plaintiff was cleaning and caring for the machine, and his hands were caught and injured between the plunger and the rim of the sausage can.   The machine was perfect in its design and original construction.   Plaintiff claimed that the piston descended suddenly and without warning by reason of a leakage of steam around the piston, due to defective and worn-out packing, but upon the evidence (including expert testimony), showing that such an escape of steam sufficient to cause the piston to descend would have made it impossible for plaintiff to be working where he was, it is *held* that no negligence on the part of the defendant was proven.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge.   *Reversed.*

This is an action for personal injuries. The plaintiff, a minor not quite eighteen years of age, suffered an accident by which he lost parts of both hands while putting in order a sausage-stuffing machine in the defendant's packing works at Cudahy, Wisconsin, January 17, 1910. He had been in the defendant's employ about four years, and he had operated the machine on which he was injured about a year and a half. The stuffing machine is a kind of pump which ejects the sausage meat through faucets at the bottom into the casings. There is a large can or bucket into which the prepared meat is put, and above the can a cylinder or steam chest in which a piston moves up and down, having a plunger on the lower end which just fits into the can or bucket just mentioned, and presses down on the meat, thus crowding it out of the faucets at the bottom of the can. The can tilts automatically to one side as the plunger reaches its highest elevation, in order that the meat may be conveniently placed in it. It returns to the upright position as the plunger descends. The piston and plunger are operated by a lever in front of the operator, which he moves up and down and which controls a slide valve by which live steam at seventy-five or eighty pounds pressure is let into the steam chest either above or below the piston head, as it is desired to lower or raise the plunger. This lever may be placed at the middle, in which case no steam enters either above or below the piston, and the plunger remains stationary at any point where it is desired to place it. There is no automatic discharge of exhaust steam, nor can there be any such discharge into the exhaust pipe unless the lever is either raised or lowered sufficiently to allow steam to enter one side or the other of the steam chest, in which case an escape into the exhaust from the other side is likewise opened. There can be no entry of steam into either side when the lever is exactly at the middle point.

The accident happened on Monday, just before the closing hour of the factory. The plaintiff had operated the machine

successfully during the day, and had stopped it by placing the lever at the middle point in order to wash the machine. He also took off and washed a certain spring or rim which was screwed on to the bottom of the plunger head and which fitted the inside of the can. Having concluded the washing operations, he started to put the spring or rim upon the plunger head, in which operation he was assisted by Ed. Schlueter, who worked by his side, tying sausages as they were stuffed. He first let down the plunger head several inches by the use of the lever and set the lever at the halfway point, so that no steam should enter either chamber. The plunger head was then just above the top edge of the can or bucket and perhaps an inch and a half distant at the farthest point. The can had not yet returned entirely to its upright position, and hence the distance of its edge from the plunger was greater on one side than the other. The plaintiff claims that just at this juncture the plunger head descended without warning and without the touching of the lever by any one. The fact is that in some way the plunger head was caused to descend, and the plaintiff's hands were caught between it and the edge of the can, cutting off a number of fingers from each hand.

The plaintiff claims that the plunger descended because the steam leaked around the piston, by reason of defective and worn-out packing, and that the defendant was negligent in permitting the packing to become defective and in not warning him of the danger. The defendant denied that there was any defect in the packing, and claimed that it was a mechanical impossibility for the accident to have happened from leakage of steam. The jury by special verdict found negligence proximately causing the injury both in the condition of the packing and in the failure to warn; exculpated the plaintiff from contributory negligence; and assessed the plaintiff's damages at $8,500. Judgment for the plaintiff was rendered on the verdict, and the defendant appeals.

For the appellant there were briefs by *Harper & McMynn,* and oral argument by *R. N. McMynn.*

For the respondent there was a brief by *Barton & Kay* and *Glicksman, Gold & Corrigan,* and oral argument by *Humphrey Barton.*

The following opinion was filed December 10, 1912:

WINSLOW, C. J. Here is one of the many cases which vividly illustrate the absolute necessity of workmen's compensation laws, if we wish to approximate justice to the workingman in these days of powerful machinery and many operatives. Perfect as the machinery may be, there are and probably must ever be deadly perils dogging the footsteps of every man who works about it; perils which are only awaiting a moment's inattention or a thoughtless move on his part to do their work.

The plaintiff here is just entering on manhood seriously maimed, while endeavoring to perform his duty in the care of his machine. He was not wilfully negligent, and, at the worst, was only guilty of momentary inattention or thoughtlessness, yet because we feel compelled to say that the evidence demonstrated that leakage of steam could not possibly have caused the accident we are obliged to deny him all relief.

It is practically admitted in this case, and if it were not admitted it is proven beyond doubt or cavil, that the sausage-stuffing machine in question was perfect in its design and original construction. The steam chest, steam pipes, exhaust pipe, slide valve, lever, and piston were admirably fitted to accomplish the purpose desired, namely, to operate the plunger head downward into the sausage can and lift it out again just as rapidly and just as slowly as the operator wished or the necessary details of the work required, and to halt the plunger at any desired point without danger of unexpected motion. All this could be done simply by the

proper manipulation of the lever, which operated an eccentric controlling the slide valve, which in turn let in or shut off the supply of steam to the steam chest, both above and below the piston head.  By moving this lever one way, the slide valve let in live steam above the piston head and at the same time opened the exhaust pipe so that any steam below the piston head would at once be discharged.  By moving the lever the other way, the slide valve let in live steam below the piston head and any steam remaining above was discharged into the exhaust.  By placing the lever at the middle point, both the entrances and the exits of steam were closed and the piston with its plunger was stopped wherever it might be at the time with live steam both above and below the piston head.  According to the plaintiff's testimony the lever was at this middle point before and at the time when the plunger suddenly descended without warning and without having been touched by himself or any one else.  It had been placed at that point a few minutes before at the close of the day's stuffing and just before the plaintiff washed the plunger and can, which he testifies was done at the end of the day's work. It is apparent that there had not been time after the happening of the accident for any considerable condensation of the steam in the steam chest to have taken place.  It is shown beyond dispute that the friction of the piston head against the sides of the steam chest, together with the friction of the piston itself on the packing and stuffing box, where the piston enters the steam chest, is considerable, and will not allow the plunger to descend of its own weight nor unless overcome by a considerable weight attached to the plunger.

In view of all these facts, it is entirely certain that the plunger could not descend when the lever is not moved except by the escape of imprisoned steam from below the piston head, sufficient in amount so that the greater pressure of the imprisoned steam above the piston head would force down the piston and plunger.  There was absolutely no place where such escape could take place except around the circumference

of the piston, where it enters the stuffing box at the bottom of the steam chest, and here is where it is claimed by the plaintiff that the escape actually took place. The plaintiff's hands were just a few inches below this place as he was at work putting on the spring or rim at the time of the accident. With only the layman's knowledge of the qualities of steam and its enormous expansion as it turns from water into steam (at seventy-five pounds pressure its volume is 310 times its water volume), and remembering that the steam in the steam chest stood at or near seventy-five pounds pressure, it would seem very certain that an escape of steam around the piston sufficient to cause a sudden drop of the piston head must be very large and make it impossible for an operative to do any work about it.

We are not left to a layman's speculations on this point, however. The very machine in question was thoroughly tested by a competent and disinterested expert mechanical engineer before the trial, in the most careful and painstaking manner. With the steam in the steam chest at the usual pressure and the lever at the middle, he deliberately loosened the nuts holding the gland on the piston rod stuffing box so as to cause leakage, and carefully observed by chronograph, as well as by the eye, the results. By the first and most inconsiderable loosening of the gland and stuffing box there was leakage of hot water, but no steam. For five minutes the condition remained the same, but there was absolutely no movement of the piston. The nuts were then further loosened so that there was leakage of both water and steam and the result observed for another five minutes, and still there was no movement of the piston. The nuts were then loosened so as to permit leakage of boiling water and steam so considerable in extent that a person could not work about or below the steam chest without blistering his hands, and still there was no motion downward of the piston. The expert further testified that had he loosened the gland further, so that there would have been a larger escape of water and steam,

he could not have gotten his hands near it on account of the escaping steam and hot water.

So far as all material facts were concerned, the tests were made under conditions identical with the conditions at the time of the accident. The fact that the leakage was caused by loosening the nuts of the gland, instead of by defective packing, can make no difference in the volume of steam; it must escape in the same place whichever be the cause, and if the volume of steam escaping be the same the results must be the same. From the tests so made the expert testified that it was a mechanical impossibility for leakage no greater than that which he produced while making his third test, to cause any movement of the plunger head. It is unquestionable under the evidence that there was no leakage even as great as that which existed during the third test, for neither the plaintiff nor his assistant had any difficulty, so far as steam or water was concerned, in adjusting the spring immediately below the piston. There is nothing in the evidence which in any way throws doubt on the facts testified to by the expert or his conclusions. On the other hand, both his facts and conclusions agree entirely with what common sense and common knowledge of the properties of steam tell us. We are obliged to say that the accident could not have happened from escaping steam, because if steam had escaped in sufficient quantities to cause the piston to descend it would not have been possible for the plaintiff to be working where he was working. Hence there is no negligence proven on the part of the defendant.

This result renders unnecessary the consideration of any other question.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint on the merits.

A motion for a rehearing was denied, with $25 costs, on February 18, 1913.