Adams v. Menasha Paper Co. 154 Wis. 577.

ADAMS, Appellant, vs. MENASHA PAPER COMPANY, Respondent.

*October 7—October 28, 1913.*

Appeal: *Error must be shown: Master and servant: Dangerous machinery: Negligence: Burden of proof: Anticipation of injury: Accident: Guarding machinery.*

1. In order to reverse a judgment on appeal, error must affirmatively appear; hence defects and obscurities in the evidence and bill of exceptions count against the appellant.
2. Where plaintiff claims that a machine made an unexpected and unprecedented movement which injured him, he must show, not only that the movement was made, but also the construction of the machine, so as to establish that such movement was caused by defective construction or want of repair from which the result might, in the exercise of ordinary care, have been anticipated by defendant.
3. Reasonable anticipation of injury to some one is an essential constituent of actionable negligence.
4. If a movement of a machine causing injury is so wrapped in mystery that no one can explain it or its cause, and the occurrence is unprecedented, manifestly there could have been no anticipation of injury therefrom and the event becomes an unaccountable accident and not an act of negligence on the part, of the employer.
5. Sec. 1636j, Stats., relating to the guarding of dangerous machinery, does not require such covering or guarding of operative parts as will entirely prevent the operation of the machine.

Adams v. Menasha Paper Co. 154 Wis. 577.

6. The evidence in this case is *held* insufficient to sustain findings of the jury that plaintiff's injury was caused by defects in the machine at which he was working or by the employer's failure to guard a sprocket wheel thereon.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *W. H. Frawley & T. F. Frawley,* and oral argument by *T. F. Frawley.* They cited, among other cases, *Mickuczauski v. Helmholz M. Co.* 148 Wis. 153, 134 N. W. 369; *Kaczmarek v. Geuder, P. & F. Co.* 148 Wis. 46, 134 N. W. 348; *Buggs v. Rock Co. S. Co.* 143 Wis. 462, 128 N. W. 100; *Berger v. Abel & B. Co.* 141 Wis. 321, 124 N. W. 410; *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 114 N. W. 841; *Gelo v. Pfister & V. L. Co.* 132 Wis. 575, 113 N. W. 69; *Montanye v. Northern E. Mfg. Co.* 127 Wis. 22, 105 N. W. 1043.

'For the respondent there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

TIMLIN, J.    This cause was tried before the court and a jury and a special verdict returned finding that the machine in question was in a defective condition, and the arm thereof, because of such defective condition, without a movement of the controlling lever and of its own weight fell upon the arm of the plaintiff and caused his injury; that this defective condition of the machine was occasioned by want of ordinary care on the part of the defendant; and that this want of ordinary care was the proximate cause of the plaintiff's injury. Another section of the special verdict found the sprocket wheel carried by the above mentioned arm so located as to be dangerous to employees in the discharge of their duties, and that the defendant negligently failed to guard said wheel, which negligence was the cause of the injury in question. The circuit court changed the answers of the jury to several questions of the special verdict and so as to find that the arm

of the machine, notwithstanding the defective condition of the machine, did not fall upon the arm of plaintiff and cause his injury, and so as to find that the failure to guard the sprocket wheel was not the proximate cause of plaintiff's injury. Upon the verdict so changed the court gave judgment for the defendant, and from that judgment this appeal is taken, the appellant contending that there was evidence to support the verdict of the jury in the particulars above indicated. Photographs of the machine are introduced in evidence, and on the part of the plaintiff some testimony was given in a disconnected and confused way descriptive of the operation and control of the arm of the machine, and this is not helped out by evidence on the part of the defendant.

The main outlines of the machine, its uses and purposes, are clear enough. A trough-shaped appliance elevated about three feet from the floor extended from right to left for a considerable distance, and in the bottom of it and returning under it was an endless carrier chain which brought up in said trough pieces of logs or blocks about two feet in length and of varying diameters. On one side of this trough was a stool for the operator with the controlling levers hereinafter mentioned projecting toward that side. Directly across this trough from the operator was a large disk wheel with its flat side toward the trough-like appliance and carrying knives inserted in this flat side like the knife of a plane or jointer but larger. Directly over this disk wheel was what is called the arm, which consisted of a center sprocket wheel and two spur wheels suspended on a somewhat triangular-shaped frame fastened at one angle upon a shaft, which frame was raised and lowered by means of steam pressure in a horizontal cylinder fixed back of this shaft, and connected with the frame by a piston rod which moved a lever or crank attached to the frame toward the operator, thus letting the arm down, or away from the operator for the purpose of raising the arm. The middle sprocket wheel and chain was for the purpose of

driving the suspended spur wheels. The operator by means of one of the levers on his side lowered the arm when a block was directly in front of the cutting disk, and this arm with its spur wheels fell upon the block, pressed it against the cutting disk, and at the same time the spur wheels kept it turning against the knives so that the bark was shaved off all round. Dropping the arm necessarily stopped the carrier chain and the block remained pressed against the cutting disk and turning round until the bark was shaved off all round, when the operator by means of the same lever raised the arm, the block was released, rolled back on the carrier chain, which then started, carrying away the shaved block and bringing another up in front of the cutting disk, when the operator again dropped the arm as before. These spur wheels were each provided with thirty-six spurs or teeth each one and one-eighth inches long, and the wheel was about ten inches in diameter from spur point to spur point. The length of the arm from the point of attachment above the cutting disk to the farther spur of the spur wheels was about twenty-four inches. When the arm was raised up, the distance from the conveyer chain to the nearest point of the spur wheels was eleven and one-half inches, and with the arm upraised the distance from the top of the trough on the side nearest the operator to the nearest point of the spur wheels was six and three-fourths inches. The distance from the edge of the trough nearest the operator across the trough to the cutting disk was twenty-two and three-fourths inches. The distance between the two spur wheels was ten and three-fourths inches. The four levers in front of the operator and on his side of the trough-shaped appliance were used, numbering them from right to left, as follows: No. 1 to kick the block when barked from the disk to the conveyer chain; No. 2 to raise and lower the arm; No. 3 to stop the conveyer chain; and No. 4 to stop the sprocket and spur wheels. Whenever the arm was down the conveyer chain was thereby stopped, and it started when the arm was

raised, but this chain could also be stopped by lever No. 3 when the arm was raised.

Beyond this we can get little or no light from the evidence regarding the construction of this machine. The connection and operation of no one of the controlling levers is traced from the place where the operator took hold of it to the point at which it performed its work. Vague references are made to valves and jam nuts. The plaintiff very positively testified with reference to lever No. 2, which is the most important lever so far as this case is concerned, that he did not remember which way this lever was pressed, up or down, in order to raise the arm of the machine. A machinist testified that "if you raised your lever to send the arm up it will go up and stay there, and if you raised your lever it will stay down as long as you hold your lever down, and if you raise your lever it will be up." That the lever controls the steam feed in some way is proven. That it does so by regulating the size of the openings for the ingress and egress of steam is probable. It seems to have been thought a sufficient description of an appliance to call it a "valve." When we consider the variety of valves in use and the differences in construction, this is a very inadequate description to be used by one upon whom the burden rests of showing defective construction causing an unexpected and unprecedented movement of the machine. The stenographer's work or the transcript is defectively executed, and appellant's counsel seem to have availed themselves of the labor-saving provisions of sec. 2873m, Stats., and used the transcript of the stenographer's notes for a bill of exceptions without reading over or correcting the same. For illustration: In answer to a question asking how the steam power was applied to raise the arm of the machine the bill of exceptions reads:

"It is applied by a valve connected into the steam chest, there is three part, there is a steam part and two exhausting parts, and by moving this lever pulls that little valve back and

forth; that when you open the steam part you close one exhaust and exhaust the steam out of the other and when you shove lever other way it simply reverses and let exhaust steam out of other part and let steam in through valve and shoves piston back and forward in the cylinder."

Probably the word "part" here means "port," as indicated by the context, but this context also indicates incorrect reporting or transcription in other apparent respects. Defects in the evidence and defects in the bill of exceptions count against the appellant.

Beyond the fact that the arm in question is raised and lowered by the action of steam in the cylinder mentioned and that the entrance and exit of this steam is controlled by the lever mentioned, there is nothing definite. There is much confusion and apparent contradiction. The foreman as a witness testified that when you pull the lever the arm goes up and when you push it down the arm goes down. And along toward the end of the case another witness testified that this controlling lever was attached to a spring which always kept it up except when pushed down and held down by the operator, and that when pressure on the lever was released the lever would rise by force of this spring and this would cause the arm to rise by reason of the steam acting upon the piston in the cylinder. This would show that the normal position of the arm was up, where it remained until brought down in the manner stated.

In order to reverse a judgment error must be affirmatively established. To merely establish that the appellant or his counsel does not understand much if anything about the machine, or where the evidence is insufficient to show the construction of that part of the machine in question, or in what the alleged defect consisted, there is not enough to make a *prima facie* case of liability against defendant except in those rare cases which call for an application of the rule *res ipsa loquitur.* This is not such a case. Where it is claimed that the machine made an unexpected and unprecedented move-

ment which injured the plaintiff, it is clearly the duty of the plaintiff to show not only that such movement was made, but also the construction of the machine, so as to establish that such movement was caused by defective construction or want of repair, and was probable, so that such result might in the exercise of ordinary care have been anticipated by defendant. This anticipation of injury to some one is an essential constituent of actionable negligence. *Johnson v. Berwind F. Co.* 154 Wis. 1, 141 N. W. 1018; *Brossard v. Morgan Co.* 150 Wis. 1, 136 N. W. 181. If the fall of the arm was so wrapped in mystery that no one could explain why it fell, and the cause of its fall inexplicable and the fall unprecedented, manifestly there could have been no anticipation of injury from this fall; and the event becomes an unaccountable accident and not an act of negligence on the part of the employer.

The evidence is sufficient to sustain a finding that the machine was defective in two respects: first, with reference to the so-called arm when put in motion by the lever ascending and descending with undue velocity or force; second, in respect to the apparatus for pushing or kicking the barked logs away from the cutting disk and into the trough after they were finished. This last did not operate efficiently or at all. The machine had been in use only six or seven days and was being constantly experimented with and adjusted. But according to the evidence, neither of these defects caused plaintiff's injury. The claim is that his injury was caused by the sudden and unexpected dropping of the machine arm upon plaintiff's right arm while he was engaged in removing a block from the disk cutter with his right hand. The evidence is also sufficient to show that the spur wheels were such as should have been securely guarded or fenced under sec. 1636*j*, Stats. But the omission of the employer so to do was not the cause of plaintiff's injury, because no guard on the outside or exposed portion of these wheels would have pre-

vented the injury in question sustained by the plaintiff pushing his hand and arm under that portion of the spur wheel which operated upon the block of wood, and this could not have been covered or guarded without entirely preventing the operation of the machine, any more than one could place a guard over the cutting side of a circular saw and between it and the timber to be sawed.   Lever No. 4 in front of the operator, which was in working order, enabled him to stop the sprocket and spur wheels before thrusting his hand under them.   He omitted to use it, thus defeating any cause of action which he might have maintained on the ground that removing this block of wood by hand was the regular mode of operation which he had been instructed to employ, and was obliged to employ, on account of the defective condition of the kicking device, and that in doing so his arm inadvertently, and notwithstanding due care on his part, came in contact with the revolving spur wheels.   The injury in question occurred on June 8, 1910, and the plaintiff must recover if at all on the ground that by reason of defective condition of the appliance the arm of the machine carrying the revolving spur wheels unexpectedly fell upon the arm of plaintiff while he was engaged in removing this block of wood.   Describing the manner of his injury he said:

"Just about before I was hurt there was a block came in there.   I barked it and it stayed there and this block came in here.   Q. What did you do with the arm?   A. Raised it up with one arm, helped raise it up, and I saw the block was pinned in there with another one so I raised up the arm and reached in, took my hand off the arm of the machine after I helped raise it up and I reached in this hand and got the block.   I saw there was no other way to do it, I had to reach in there or else get hit with the block when they came out.   I had seen the expert do this himself. . . . I got my hand in there and after I reached in this thing fell down. This arm of the machine fell down.   The arm fell down of course and caught my arm and there I was, and after it got hold of me I didn't know anything after that.   These

sprocket wheels, one of them I guess it was, it got me and pulled my arm up into the machine. That arm had never fallen down that way before. I did not press the lever to make it come down. I never had my hands on the lever, I had my hand on the arm to raise it up. *Q.* Before that time when you raised up the arm did you set the lever anywhere, the steam lever to hold it? *A.* Yes, sir, I had it in its place. *Q.* Now before you were injured in raising—when you raised up this arm and come to the point where you were going to stop it, did you set the lever in any place and hold it there? *A.* Yes, sir, I did. . . . *Q.* The lever was in its place as before and kept the arm up? *A.* Yes, sir, it was in its place."

This falls far short of showing that the machine arm fell by reason of any want of repair or defective construction. It rather tends to show that somewhere between the spur wheel end of the arm and the farther end of the steam cylinder there was play enough so that the plaintiff could with his left hand raise the machine arm some distance in order to thrust his right hand under the spur wheel, and that he did so and then let it drop back the same distance; or that by first using the lever he let in steam at the near or lifting side of the cylinder and opened the exhaust at the opposite end; then the steam being low or scanty was unable alone to raise the machine arm. He undertook to help it with his left hand and so raised the arm higher than the steam alone as it then was would raise or hold it. Removing his left hand this arm dropped back to the place where the steam unaided was of sufficient strength or pressure to hold it. The jury on such evidence could not be allowed to conjecture that the dropping of the machine arm was caused by some defect not shown to exist by any evidence. As the law only allows a recovery for negligence of the employer which was the proximate cause of the injury and requires the plaintiff to produce evidence tending to show such negligence, we cannot do otherwise than affirm the judgment.

*By the Court.*—Judgment affirmed.