KRUECK, Respondent, vs. PHOENIX CHAIR COMPANY, Appellant.

*April 14—May 1, 1914.*

*Statutes: Repeal by implication: Construction: Master and servant: Injury to servant: Duty to guard saws: Practicability: Questions for jury: Evidence: Contributory negligence.*

1. Repeals by implication are not favored, and where there is nothing inconsistent or conflicting in the statutes in question there is no repeal by implication.

2. Sec. 1636*j*, as amended by ch. 470, Laws of 1911, which required that saws so located as to be dangerous to employees in the discharge of their duties be securely guarded or fenced, was not impliedly repealed by ch. 485, Laws of 1911, requiring the employer to furnish to his employees a place of employment as free from danger as the nature of the employment will reasonably permit.

3. Although under said sec. 1636*j* the duty to guard is absolute and the exercise of ordinary care on the part of the employer cannot be deemed a compliance with such absolute duty, yet that statute is not to be construed to require such guarding of a machine as would prevent its operation, or the abandonment of it in case it cannot be securely guarded. The true meaning and intent of the statute is that the appliances shall be guarded or fenced as safely and securely as is possible consistent with their continued practical use.

4. Mere difficulty, or inconvenience, or impracticability falling short of preventing the practical operation of a machine, however, is not sufficient excuse for failure to comply with the statutory duty.

5. Whether or not it is possible to cover a circular saw so as not to interfere with its practical operation and at the same time so as to prevent the injury sustained, must in most cases be a question of fact for the jury.

6. For this reason, in an action for an injury sustained in operating a circular saw used for cutting grooves in chair backs, it was error to exclude the testimony of a deputy of the industrial commission who qualified as an expert, to the effect that the saw in question had been examined by himself and other members of a committee appointed by the commission who had come to the conclusion that the saw could not be guarded and had made an order by which circular saws were excepted from the requirement of guarding while doing specific work which it would be impossible to do when the saw was guarded.

7. There being nothing incredible or impossible in plaintiff's testi-
mony that the accident occurred by reason of the lever which
held the chair back in position escaping from the ratchet post
in which it was fastened and flying upward, throwing his hand
against the cutting edge of the saw, the question of his contrib-
utory negligence was for the jury.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

On October 10, 1912, the plaintiff was injured while in
the employment of defendant operating a grooving saw. A
special verdict found: (1) the unguarded groove saw which
injured the plaintiff's hand was so located as to be dangerous
to him in discharging the duty of his employment which he
was performing when he was injured; (2) defendant's fail-
ure to guard the saw was a proximate cause of the plaintiff's
injury; (3) the rubber bumper which a lever pressed down
on the chair backs to hold them in place while being grooved
by the saws was at the time of the plaintiff's injury in such a
condition as to permit the lever and chair backs to become
loose while the machine was in operation; (4) the condition
last mentioned existed during such length of time prior to the
injury that the defendant, in the exercise of ordinary care
and diligence, should have learned of it and remedied the
same; (5) failure to remedy this was a proximate cause of
the plaintiff's injury; (6) there was not on the part of the
plaintiff any want of ordinary care which contributed to
cause the injury.

The appellant assigns error: (1) the denial of its motion
to direct a verdict in its favor. This includes several minor
assignments of error. (2) Also the refusal of the court to
submit to the jury a question as follows: "Could the defend-
ant's grooving saw on which the plaintiff was injured be
used for the work being done at the time he was injured if
guarded?" (3) A ruling was made with reference to an
order of the industrial commission requiring the guarding of

circular saws except while specific work was being done where it was impossible to do the work when the saw was guarded. A ruling was made excluding the testimony of the witness Kaems, a deputy of the industrial commission, who qualified as an expert and who testified that the saw in question had been examined by himself and other members of a committee appointed by the industrial commission who had come to the conclusion that the saw could not be guarded and had made the order above referred to. (4) An instruction was given to the jury as follows:

"There is some testimony in this case to the effect that because of the construction of this machine, and the nature of the work which it does, and the way in which it performs that work, it cannot be operated with a guard upon or over the saws other or further than the protection which is now afforded by the other parts of the machine and by the chair back when placed on the carriage. If that be the fact, it does not change nor affect the answer which you should give to this first question. The question does not ask you to say or to consider whether it is or is not practicable or feasible to operate the machine without a guard upon it, nor whether any guard can or cannot be devised which can be used on the machine without materially impairing its efficiency or working capacity."

The following instruction was requested by the defendant and refused:

"You are instructed that if it was impossible to do the work of grooving chair backs on defendant's grooving saw machine as plaintiff was doing at the time of his injury, when the saw on said machine was guarded, then the defendant was not required by law to guard said saw."

It was practically conceded that there was no sufficient evidence to sustain the third finding of the special verdict.

There was testimony tending to show that the chair back which plaintiff was engaged in grooving was clamped down upon a carriage moving in an arc over the top of the saw

which cut a groove in the under side thereof while the carriage was being pushed away from the operator. When the carriage was pushed to the farther end of the arc a considerable portion of the saw was exposed in front of the body of the operator. The carriage was then pulled back toward him by the operator holding the lever handle with his right and the chair back with his left hand and the chair back removed and another placed in the carriage. The chair back was held or clamped on the carriage by means of a lever hinged at the end farthest from the operator, having a handle on the near end and running parallel with the flat surface of the saw over the saw and carriage and about three inches to the right of the saw. This lever had a rubber block or pad about the middle, and there was an upright post on that part of the carriage nearest the operator, having a notch or ratchet edge, and into this the lever was hooked when pressed down upon the chair back. The chair back was held in place by projecting lugs to prevent lateral movement and by the rubber block on the lower side of the said lever pressing on the upper side of the chair back to prevent upward displacement. When by reason of lesser convexity in the chair back the rubber block would not, with the lever down to the lowest notch, reach down far enough to press and hold the chair back in position, a wedge was placed between the lower end of the rubber block and the chair back. During this operation upon a chair back fastened in the manner described, the plaintiff, after pushing the carriage away from him and thereby making the desired groove in the under side of the chair back, began to pull the carriage back toward him, when the lever escaped from the ratchet notch, and plaintiff's right hand, with which he had been pulling the carriage back by the lever handle, was unintentionally moved to the left a few inches and came in contact with the upper cutting edge of the saw, causing the injury complained of.

For the appellant there was a brief by *Williams & Stern,* and oral argument by *Burdette Williams.*

*Simon Gillen,* for the respondent.

TIMLIN, J.   At the threshold of this inquiry some doubt is suggested with reference to what statutes apply to the case, although appellant contends that under either statute it was entitled to a directed verdict.   It is argued that sec. 1636*j*, Stats., as amended by ch. 470, Laws of 1911, approved June 28, 1911, published June 29, 1911, was repealed by implication by ch. 485, Laws of 1911, approved and published June 30, 1911.   Repeals by implication are not favored.   Where there is nothing inconsistent or conflicting in the statutes in question there is no repeal by implication. *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513.   Sec. 1636*j* has been construed as not requiring such fencing or guarding as would prevent the practical operation of the machine. *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839; *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066; *Willette v. Rhinelander P. Co.* 145 Wis. 537, 555, 130 N. W. 853; *Adams v. Menasha P. Co.* 154 Wis. 577, 583, 143 N. W. 658; *Montevilla v. Northern F. Co.* 153 Wis. 292, 295, 141 N. W. 279.   The two cases first above cited are somewhat criticised in *Willette v. Rhinelander P. Co., supra,* but that opinion must be read with reference to the statute as it then existed and with reference to the particular appliance there under consideration.   In *Willette v. Rhinelander P. Co., supra,* it is also said: "Of course, a machine must be kept sufficiently open so the work can practicably be done for which it was designed. . . . Otherwise operations by machinery would be practicably impossible."   Page 555.

Premising that under the statute as it read when this injury occurred the duty to guard or protect is absolute; and that the exercise of ordinary care on the part of the employer cannot be deemed a compliance with such absolute duty, yet

the statute is not to be construed to require the performance of that which is impossible. A mandate to guard, fence, or protect an appliance in use assumes the continued use of that appliance. The imposition of an absolute duty to guard is not the same as the imposition of a duty to guard absolutely. If it be said that the employer must, in order to comply with this statute, wholly discard any appliance of the class mentioned which cannot be securely guarded or fenced, or that he must forego their use altogether, that is, we think, deriving from the statute a consequence not contemplated. The statute, sec. 1636j, contemplates the continued use of the described appliance, but of course guarded, fenced, or protected. It therefore means that the appliances shall be guarded or fenced as safely and securely as is possible consistent with the continued practical use of such appliances. This does not mean that the employer may insist on some particular form or style of machine, which particular form or style it is impossible to guard, when machines of a similar nature and capable of efficiently performing the same function may be had which it is perfectly feasible to guard; but (for illustration) the employer is not obliged to discontinue the use of circular saws because it might be impossible to place a stationary guard over the cutting edge thereof, although it might be his duty, when practical, to adopt as a guard the ordinary disappearing saw. In other words, the duty to guard might carry with it the duty to change the setting or frame of the saw so as to make a guard possible and practicable. In *Besnys v. Herman Zohrlaut L. Co., ante,* p. 203, 147 N. W. 37, the appliance could be guarded and still be operated. Mere difficulty, or inconvenience, or impracticability falling short of preventing the practical operation of the machine, is not sufficient excuse for failure to comply with the statutory duty. *Willette v. Rhinelander P. Co.* 145 Wis. 537, 130 N. W. 853.

Ch. 485, Laws of 1911 (secs. 2394—41 to 2394—71, Stats.), requires the employer to furnish to his employees a

place of employment as free from danger as the nature of the employment will reasonably permit. This is not contradictory of or in conflict with sec. 1636*j* as construed by this court, and, applying ch. 485, *supra,* the industrial commission made a general order to the effect that all circular saws must be guarded, etc., except while specific work is being done, where it is impossible to do the work when the saw is guarded. There is therefore no inconsistency between these statutes; one is specific and the other is general, but covering cases which might come under both with like effect so far as the instant case is affected. Whether ch. 485, *supra,* has in some other aspects a broader scope need not be decided. Whether it is possible to cover a saw so as not to interfere with its practical operation and at the same time so as to prevent the injury sustained, must in most cases be a question of fact. In the instant case appellant's counsel argues that the impossibility of so doing is apparent, while respondent's counsel in argument proposes an ingenious plan of guarding which he considers perfectly feasible. The fact that respondent's counsel felt it necessary to make such argument is a subconscious impeachment of the judgment he is endeavoring to support. Expert investigation might weaken or destroy either claim. Unless the defendant failed in its duty to guard the saw in question, no negligent act or omission creating liability for this injury appears. It seems quite manifest that the judgment appealed from cannot be supported because of the ruling excluding the testimony of the witness Kaems and because of the given instruction quoted and the requested instruction quoted and denied, unless we are prepared to say it appears clearly that the saw could have been guarded or protected without preventing its practical use, and therefore these rulings were not prejudicial. We are not prepared to say this. Neither could we uphold the request to direct a verdict for defendant unless it appeared clearly that the saw could not have been guarded or protected without preventing

its practical use.    Neither of these conditions is conclusively established.

The questions for trial on this point were: (1) whether the saw was so located as to be dangerous to employees in the discharge of their duty; (2) whether it was securely guarded or fenced, considering the form of the carriage, the exposure or nonexposure of the saw, and the covering position of the chair back; (3) whether it was possible to further guard or fence the saw as to prevent injuries similar to that received by plaintiff without at the same time preventing the practical operations of the saw.    There was therefore error in excluding the testimony of the witness Kaems, in giving the quoted instruction, and in the refusal to give the requested quoted instruction.    The ruling excluding the testimony of the witnesses Wolff and Van de Loo rests upon a different ground. The testimony sought to be elicited from these witnesses went not to the impossibility of furnishing a guard or protection which would permit the saw to be used and at the same time protect the plaintiff, but to the question of defendant's negligence in not furnishing a guard.    This last is a defense barred by the statute in force governing this case, and the exclusion of this testimony must be upheld.

With reference to the alleged contributory negligence of the plaintiff, it must be borne in mind that the assumption of risk is by statute eliminated and that the burden of proof is upon the defendant to establish contributory negligence. What act, fact, or circumstance constituted contributory negligence in the instant case is quite difficult to specify.    The argument of appellant's counsel on this point is not very explicit.    As we understand it, he assumes on this point that the accident occurred as claimed by the plaintiff.    This, for obvious reasons, he must do as a basis for such argument by which he assumes to raise a question of law.    Second, that the plaintiff admitted to others that the accident was due to having dropped the chair back while in the act of turning

around to place it in the finished pile and that he involun-
tarily grabbed for it, and so got his hand on the top of the
saw.   This last is not the testimony of the plaintiff, and this
is not shown by uncontroverted evidence.   The testimony of
the plaintiff tends to show that in drawing back the carriage,
with his right hand grasping the handle forming the end of
the lever in question, the lever escaped from the ratchet post.
He says:

"When I pulled him back and I pulled the carriage back
as far as the back touched the saw, then the handle came open,
the lever came open and my hand flew on the side and into
the saw.   The lever flew open upward, I can't say how far,
but flew upward and threw my hand upward on the side and
my hand flew in the saw, the right hand."

We find nothing incredible or impossible in this state-
ment.   The probability of such accidents happening no doubt
gave rise to the requirement that a circular saw should be
guarded or fenced.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial.

BARNES, J. (*dissenting*).   Sec. 1636*j*, Stats., provided
that "All saws . . . which are so located as to be dangerous
to employees in the discharge of their duty shall be securely
guarded or fenced."   Ch. 396, Laws of 1911, which is now a
part of sec. 1636*jj*, provides that "the duty to guard . . . in
the manner required . . . shall be *absolute*.   The exercise of
ordinary care on the part of the employer shall not be deemed
a compliance with such duties."

The learned circuit judge thought that, inasmuch as this
saw was admittedly unguarded and located so as to be dan-
gerous, it was immaterial whether or not there was any way
in which it could be guarded, and that liability followed from
its use if an injury proximately resulted from such use.   I
think the circuit judge was right in his position, and that it

is supported not only by the plain and unequivocal meaning
of the language quoted, but also by the decisions of this
court.

By the opinion of the court the 1911 law is made to read
that the duty to guard *shall be absolute if it is practicable to
guard and still use the device.* In other words, an absolute
duty is held to mean a conditional one. I think the exception
written into the law by judicial construction is unwarranted
and that the statute means what it says, and that if it is de-
sirable to amend it the work should be left to the legislature.
It was in fact rendered obsolete by the repeal of sec. 1636*j*
in 1913, but this is no reason why those who were injured
while it was in force should not have the benefit of it.

If it was the purpose of the legislature to prohibit the em-
ployer from using any saw unless it could be securely guarded,
I do not know of a more appropriate word in the English lan-
guage to use than the word "absolute." It admits of no ex-
ception. It is synonymous with "unconditional," "unlim-
ited," "infallible," and "peremptory." Webster's Dict.; Cent.
Dict.; Standard Dict. The definition given by lexicogra-
phers and that by the courts is the same. "Absolute" means
"unrestricted," "unconditional." *Columbia W. P. Co. v.
Columbia E. S. St. R., L. & P. Co.* 172 U. S. 475, 19 Sup.
Ct. 247. Not capable of being changed or defeated by any
condition, restriction, or limitation. *Falconer v. B. & J. R.
Co.* 69 N. Y. 491, 498. Not contingent or conditional.
*German F. I. Co. v. Stewart,* 13 Ind. App. 627, 42 N. E.
286, 289; *Wooddy v. Old Dominion Ins. Co.* 31 Gratt. 362,
375. Complete, unconditional, and unlimited. *Johnson's
Adm'r v. Johnson,* 32 Ala. 637, 640. Freed or loosed from
any limitation or condition. *People v. Ferry,* 84 Cal. 31, 24
Pac. 33; *Wilson v. White,* 133 Ind. 614, 33 N. E. 361.
*Without limitation unless limitation is expressly made.
Rosholt v. Worden-Allen Co.* 155 Wis. 168, 176, 177, 144 N.
W. 650. The statute itself was drawn by a person whose

ability to use the English language so as to accurately and correctly express the thought intended to be conveyed is not excelled by that of many present-day writers.

This 1911 statute was passed to change the rule adopted in a line of cases beginning with *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, and ending with *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992, decided in December, 1910, a short time before the amendment was passed. *Rosholt v. Worden-Allen Co., supra; Hilsenhoff v. Fass,* 155 Wis. 628, 145 N. W. 198.

Sec. 1636*j* was originally enacted in 1887. It simply required certain safeguards to be adopted and prescribed a penalty for failure to comply with such requirements. How far it affected the civil liability of employers was a mooted question. Twenty-four years after the act was passed it was thought it had not been construed so as to carry out the legislative intent, or else that conditions had changed so as to demand that the law be made more drastic. The latter supposition is probably the more correct one, as the legislature was in session when the *Guinard Case* was decided, and neither then nor during the six succeeding sessions was any attempt made to change the rule of that case. Be this as it may, the legislature of 1911 had the decision of the court before it, as well as the views of the minority of the court as expressed in the dissenting opinion, and concluded that inasmuch as the law did not accord with the views of the minority it should be changed so as to do so.

Ch. 485, Laws of 1911, was introduced in the legislature March 22, 1911. It required every employer to furnish as safe a place to work in as the nature of the employment would reasonably permit.

Ch. 396 was not introduced until April 19th. It made the duty to guard saws and some other machinery absolute. These two acts were carried along and considered at the same time. Ch. 396 was published on June 20th, and ch. 485 ten

days later. It is apparent that as to the appliances covered by ch. 396 it was intended to impose greater obligations on the employer than were imposed by the proposed law applying to occupations generally, which is now ch. 485. One imposed an absolute duty to guard certain machinery; the other required the place of employment to be made as safe as its nature would reasonably permit. Under the construction now placed on ch. 396, it means no more than does ch. 485, and the act was wholly useless.

Construing sec. 1636—81, which is not as mandatory in its terms as is sec. 1636*jj*, in the *Koepp Case* (*Koepp v. Nat. E. & S. Co.*), 151 Wis. 302, 313, 139 N. W. 179, the court said the statute made the employers "absolute insurers," except as against assumption of risk and contributory negligence. This language is in substance repeated in *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 543, 138 N. W. 1016, 142 N. W. 122, and in *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 176, 177, 144 N. W. 650, it is said, "the word *absolute,* as used in these decisions, must mean *without limitation unless limitation is expressly made."* There is no limitation expressed in sec. 1636*jj*.

The plain language of the statute itself and the plain language of our decisions is against the construction adopted by the court.

To the well informed person making a retrospective survey of our decisions a few years hence, the present one will I think be regarded as being more narrow and technical than was the decision in the *Guinard Case.*

Ch. 396 was not passed for the benefit of the employer, and his needs did not particularly concern the legislature. As was suggested in the dissenting opinion in the case referred to, it was passed "to lessen the annual slaughter of employees engaged in manufacturing industries." That opinion was perhaps calculated to induce the legislature to go to extreme lengths, but the purpose of the amendment was surely laud-

able, and nothing should be done to hamstring the act so as to defeat that purpose.

It is improbable that there was a single member of the 1911 legislature who had not seen saws in operation many times. Individually and collectively they knew that the cutting edge of a saw could not be securely guarded and used at the same time. A saw so exposed as to cut an inch board will cut off a man's finger. One that will cut a stick of cord wood will cut off a man's arm, and one that will cut a saw log will cut a man's body in twain. Knowing these facts, as we must assume the legislature did, the exception now incorporated in the decision was not incorporated in the law. The tendency of the court has been to construe these safety laws so that the employee will get all the benefit from them that the legislature intended, and I know of no reason why we should single this one out for different treatment.

The legislature has plainly said to employers: You must guard your saws. If you cannot or do not do so, you become insurers of the safety of employees working around them, and liable for injury caused thereby, unless the injured party is guilty of contributory negligence. There is nothing remarkable about this statute, considering the state of public opinion when it was passed. The Workmen's Compensation Act (ch. 50, Laws of 1911) had become a law seven weeks before ch. 396 was passed. In it the legislature went as far as it was deemed safe from a constitutional standpoint in the direction of compelling employers generally to become insurers. Ch. 396 related to extrahazardous machinery, and it was no doubt thought that the state in the exercise of its police power might go to the extent of prohibiting the use of such machinery entirely or of making the employer an insurer as to injuries caused thereby.

Sec. 1636$j$, read in connection with sec. 1636$jj$ as amended in 1911, is almost identical in language with sec. 1636—131, also enacted in 1911, in so far as the duty to guard dangerous

machinery is involved. I think it would be no defense for a manufacturer of cornshredders to say that a machine could not be built which would comply with the requirements of sec. 1636—131. I do not think it was so considered when *Derouso v. International H. Co., ante,* p. 32, 145 N. W. 771, was decided. I read the statute and that case as meaning that if the machine provided for cannot be built, the manufacturer must not sell such a machine in Wisconsin, and that if he does so and injury proximately results from the use of the machine the manufacturer is liable. I may be wrong about the meaning of this statute, but I think not. If not, I do not think language applicable to an employee in a manufacturing establishment can have a different meaning from similar language when applied to a farm laborer.

The cases cited in the opinion were decided before the 1911 statute was passed, and do not affect the situation. In the *Willette Case* (*Willette v. Rhinelander P. Co.* 145 Wis. 537, 130 N. W. 853), cited in the opinion of the court, it is expressly stated that sec. 1636*j* "does not create a rule of absolute liability." Page 542. In that case, too, stress is laid on the wording of sec. 1636*jj* as it then stood, and it is said that the section clearly indicated that it was not the intention of the legislature to lay down a rule of absolute duty or liability. Pages 549, 550. Less than four months after the decision was made, however, the legislature, in no uncertain terms, made the duty imposed by sec. 1636*j* absolute, by the enactment of the amendment to sec. 1636*jj* referred to. As I read the concurring opinion in the *Willette Case,* it holds that liability follows as a matter of course when it is shown that a gearing was so located as to be dangerous to employees in the discharge of their duties, that it was unguarded, that the failure to guard was the proximate cause of the injury, and that the employee was not guilty of contributory negligence. Page 570. I do not cite this as being the law of the case, but I do cite it as indicating what the legislature de-

sired the law should be.    I do not think a mandate to guard
an appliance assumes the continued use of it.    I think it here
means that if you use such an appliance you must guard it.
It may be impossible to guard a machine, but it is not impos-
sible to discontinue its use.