KALMAN, Respondent, vs. PIEPER, Appellant.

*October 8—October 27, 1914.* '

*Master and servant: Injury in elevator: Abnormal movement: Evidence: Weight and sufficiency: Contributory negligence: Special verdict: Erroneous assumption of fact: Finding by court, when presumed.*

1. In an action for injury to an employee, claimed to have been caused by an electric elevator unexpectedly resuming its ascent after he had stopped it and was about to back on to it with a truck, the jury having found that no one touched the starting cable and the alleged movement, if it occurred, being clearly an abnormal one, plaintiff's evidence tending to show such movement is *held* to have been so overcome as to leave without support the jury's finding that the elevator did so start after being stopped, there being undisputed evidence of other witnesses that the machinery was in perfect order and that no such movement had ever been known to occur before, and of experts that it was impossible for the elevator, after it had been stopped, to resume its ascent without the cable being pulled, that being the only means of applying the power.

2. Upon such evidence the jury would not have been warranted in finding that plaintiff brought the elevator to a full stop, and the trial court having thought and, in submitting the case for special verdict, having assumed that he did so stop it, such assumption necessarily took from the consideration of the jury the question of plaintiff's contributory negligence in not stopping the elevator before proceeding to back on to it. A general finding by the jury that he was not guilty of contributory negligence cannot, therefore, avail the plaintiff, nor can a finding by the court exculpating him from negligence in the particular mentioned be presumed.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injury. In May, 1909, plaintiff was employed in defendant's wholesale grocery store. It was part of plaintiff's duty to convey goods from one floor to another. This was done by means of an electric elevator driven by direct current. The ele-

vator was raised and lowered by means of cables, and was stopped by pulling a rope between the two starting cables and connected therewith. The plaintiff testified that he was directed to move a truckload of goods from one of the floors to another higher up; that at the time the elevator was below him, and he opened the elevator door and pulled the cable which caused the elevator to ascend; that when the elevator reached the floor where he was, he pulled the stop rope and brought it to a full stop; that he then turned around and took hold of the handles of the truck and proceeded to back on to the elevator; that in the meantime it had started to ascend, and in backing against the ascending platform he fell backwards on the elevator, and, being unable to reach the stop rope, the elevator proceeded upward, catching his left foot between the floor of the elevator and the ceiling and seriously injuring it. The acts of negligence relied on were that the elevator was defective and out of repair and that the defendant should have instructed the plaintiff to use a locking device attached to the elevator, the plaintiff being ignorant of the existence of such device.

The jury returned the following special verdict:

"(1) Did the elevator, after being stopped at the first floor by the plaintiff, resume its upward course without the starting cables being touched by any one? A. Yes.

"(2) If you answer the first question 'Yes,' was such action of the elevator the proximate cause of the injury to plaintiff? A. Yes.

"(3) If you answer the first question 'Yes,' ought the defendant, in the exercise of ordinary care, to have known that the elevator was likely to act in that manner? A. No.

"(4) If you answer the first question 'Yes,' did the plaintiff know before he was injured that the elevator would resume its upward course without the starting cables being touched by any one? A. No.

"(5) If you answer the first question 'Yes,' was the plaintiff warned that the elevator might so resume its upward course? A. No.

"(6) Ought the defendant, in the exercise of ordinary care, to have warned the plaintiff that the elevator might so resume its upward course? *A*. No.

"(7) Was the plaintiff given any instruction as to the purpose and use of the locking device provided? *A*. No.

"(8) If you answer the foregoing question 'No,' ought the defendant, in the exercise of ordinary care, to have instructed the plaintiff in the use of the locking device? *A*. Yes.

"(9) If you answer the eighth question 'Yes,' then was the defendant's failure to so instruct the plaintiff the proximate cause of plaintiff's injury? *A*. Yes.

"(10) Did any want of ordinary care on the part of the plaintiff proximately contribute to his injury? *A*. No.

"(11) What sum will reasonably compensate the plaintiff for the injury he has sustained? *A*. $3,500."

Judgment was rendered on this verdict for plaintiff, and defendant appeals.

The starting cable was an endless rope which passed over a sheave at the top of the shaft and another at the bottom. On either side there was a button near the top sheave. When these buttons were at the same height the electric power was shut off. By pulling down one side of the cable the electric current was applied and the elevator started upward. By pulling down the other side of the cable the power was reversed and the elevator moved downward. The elevator might also be started by pulling the cable upward. It would then go in the opposite direction from the one it would travel if the same side of the cable were pulled downward. The movement of the cable was about two feet. The ends of a loose chain were attached to either side of the cable at the buttons and there was a hook in the center of it. The stop rope was attached to this hook, so that by pulling it downward the buttons were brought to the same level. This operation cut off the electric current, and a brake was automatically applied as a result of the operation.

There was evidence tending to show that if the stop rope

was pulled with a jerk, the force on the side of the cable to
which the power was applied would have a tendency to carry
the cable below the neutral position and apply the power so
as to reverse the direction in which the elevator was proceed-
ing. We find no evidence, aside from that given by the
plaintiff, to the effect that if the stop rope were pulled so as
to stop the elevator, it would or could proceed in the same
direction without again pulling the cable.

At the time of the accident the plaintiff had been at work
four days. He had used the elevator about fifteen times and
observed no abnormal action before the time he was injured.

Boyle, another employee of the defendant, who had charge
of the shipping, used the elevator about ten or fifteen times
a day, but for what length of time is not stated. He never
knew the elevator, after it had been brought to a standstill
by use of the stop rope, to start in the same direction without
the pulling of the cable. Landowski, another employee who
ran the elevator about fifteen times a day for a period of
three years before plaintiff was injured, testified that after it
was brought to a stop by means of the stop rope, while ascend-
ing, he never knew it to start upward again without pulling
the cable. Mewes, another employee, testified that he had
operated the elevator every day for three or four years and
never knew it to make such a movement as plaintiff testified
to. Treis, another employee, testified to the same effect.
He had been in defendant's employ six or eight months at the
time of the accident and had given plaintiff such instructions
as he received about running the elevator. This witness was
foreman and superintendent in the building, and said that he
examined the car and apparatus about an hour after the acci-
dent and that the cables, brake, rope, and locking device were
in perfect order. Heller, the manufacturer of the elevator,
explained the mechanism of the elevator, the manner in which
power was applied to drive it upward and downward, and
how the power was shut off. He said the pulling of the stop

rope shuts off the power and automatically applies the brake, and that it is impossible to start the car upward again without pulling the cable, because this is the only way in which power can be applied and the brake released.   He also testified that he sent an employee monthly to inspect the elevator since it was installed.   Kieckhefer, who had been manufacturing electric elevators for fifteen years, gave substantially the same testimony as Heller about the mechanism of the elevator and manner of operation, and testified that after the elevator was brought to a stop by pulling the stop rope, it could not start in the same direction again without pulling the cable.   Fisher, an elevator inspector of the city of Milwaukee, testified that he officially inspected the elevator after the accident and agreed with Heller and Kieckhefer that the movement testified to by plaintiff was impossible.

For the appellant there was a brief by *Doe, Ballhorn & Wilkie,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *O'Connor, Schmitz & Wild* and *Louis G. Bohmrich,* and oral argument by *A. J. Schmitz.*

BARNES, J.   The argument of respondent that the cable might have been pulled and the elevator started by some of the employees on the upper floors is eliminated from consideration by the answer of the jury to the first question in the special verdict.

It must be conceded as a verity in this case that the application of power is what caused the elevator to ascend and that the shutting off of the power is what caused it to stop, the stopping being accelerated by the automatic application of the brake.   The jury finds that no one touched the starting cable; the plaintiff says he brought the elevator to a stop, and Heller, Kieckhefer, and Fisher say that it was out of the question for the elevator to resume its ascent without the cable being pulled, because this was the only means of apply-

ing the power necessary to raise it. Either their testimony is not correct or the plaintiff's testimony is incorrect. As to ordinary questions of fact, the verdict of the jury is conclusive where there is a conflict in evidence. The testimony tending to show that the elevator was in a proper state of repair is not contradicted, and leaving the evidence of plaintiff out of consideration, no one knew of the elevator making such a movement before. Witnesses who had used it for two or three years say that no such thing occurred to their knowledge. If the movement in fact took place it was clearly an abnormal one, and the verdict of the jury indicates that the jurors so thought. We know that things said to be impossible sometimes happen. The laws of mechanics, however, are constant, and it cannot be gainsaid that it takes power of some kind to raise an elevator and that after the power is shut off the ascent will stop and will not begin again until there is a new application of power. The evidence is silent as to counterweights, but if the evidence of the plaintiff and other employees is true they could not exceed the weight of the elevator. If the movement took place it was abnormal, and the reason for it is wholly unexplained.

There have been a number of cases in this court involving alleged abnormal and unaccountable movements of machinery. The rule of law governing such cases is stated in *Groth v. Thomann*, 110 Wis. 488, 495, 86 N. W. 178, as follows:

"We have left, as the only matter covered by the verdict upon which, in any event, a recovery in plaintiff's favor could be justified, the finding that the mangle ran in an unsteady manner. We are unable to find any evidence in the record to support that finding except the evidence of respondent, who testified that the machine commenced to go wrong about one hour before she was injured and that such difficulty was what caused the injury. In view of the undisputed evidence that there was no discoverable defect in the mangle, that it ran evenly ever before and ever after the time in question, and that the connections between the machine and the motor

from which the power was received were such that any such unsteady motion as claimed was practically impossible, we must say respondent's evidence was contrary to all reasonable probabilities and did not raise a conflict of reasonable inferences for solution by the jury."

In *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 283 *et seq.,* 71 N. W. 434, and in *Adams v. Menasha P. Co.* 154 Wis. 577, 581, 143 N. W. 658, it is held that, while the plaintiff's evidence tending to show an abnormal movement makes a *prima facie* case of negligence, such a showing is overcome by undisputed proof that the machine was in a proper state of repair and worked properly before and after the accident. The burden of proof is thus thrown on the plaintiff to explain the cause of the alleged abnormal movement, in some satisfactory manner. The following cases are to the same effect: *Klitzke v. Webb,* 120 Wis. 254, 97 N. W. 901; *Montanye v. Northern E. Mfg. Co.* 127 Wis. 22, 105 N. W. 1043; *Lillis v. Beaver Dam W. Mills,* 142 Wis. 128, 124 N. W. 1011; *Michalski v. Cudahy Bros. Co.* 152 Wis. 268, 138 N. W. 1002; *Ruesch v. Sentinel Co.* 153 Wis. 664, 140 N. W. 1085. The following additional authorities, although not so closely in point, in principle support the rule of the foregoing cases: *Badger v. Janesville C. Mills,* 95 Wis. 599, 70 N. W. 687; *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176; *Kimball v. Universal C. S. Co.* 151 Wis. 114, 117, 138 N. W. 91; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360. Under the decisions cited, the answers of the jury to the first and .second questions in the special verdict cannot stand.

The respondent urges, however, that the jury having found that defendant was negligent in failing to instruct the plaintiff as to the use of the locking device, that such failure was the proximate cause of the injury, and that plaintiff was not guilty of any want of ordinary care which proximately con-

tributed to his injury, the judgment is supported by the verdict regardless of questions 1 and 2 and the answers thereto.

This position is unsound in at least one respect, which we will proceed to point out. Obviously the court was in error in assuming in the first question that the plaintiff brought the elevator to a full stop. On the record as it presently stands, the jury would not be warranted in finding that he did so. The assumption that this fact was established and not in controversy necessarily took from the consideration of the jury the contributory negligence of the plaintiff in not stopping the elevator before proceeding to back into it. We cannot presume a finding of the court exculpating the plaintiff from contributory negligence in this respect, because it affirmatively appears that the court thought the elevator had been stopped, and for the further reason that on the proofs as they stand such a finding would be against the clear preponderance of the evidence. We are not certain but that a subsequent trial may develop the fact that the plaintiff has a cause of action; so it is deemed best to order a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.